**In re MUSIKAHN CORP., Debtor.**

**Bankruptcy No. 885–51693–18.**

United States Bankruptcy Court, E.D. New York.

Feb. 14, 1986.

See also 57 B.R. 942.

Wofsey, Certilman, Haft, Lebow & Balin, New York City, for debtor.

Minerva, Moloughney & D'Agostino, Valley Stream, N.Y., for Kravco, Inc.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

On December 3, 1985, Kravco, Inc. (hereinafter "landlord") moved for an order granting relief from the automatic stay, pursuant to 11 U.S.C. § 362, to allow the landlord to pursue eviction proceedings against the debtor in State court. The landlord alleges that the lease in question was terminated by its terms prior to the commencement of this case. The debtor asserts that said lease has not been terminated, and that, as debtor-in-possession, it has 60 days after the order for relief within which to assume or reject the lease. The debtor has cross-moved for an order extending its time to assume to reject the lease up to and including April 16, 1986.

## BACKGROUND

The debtor filed for protection under Chapter 11 on October 22, 1985, and sent notice to the landlord on November 2, 1985, that the automatic stay prohibited the enforcement of a stipulation agreement the parties had entered into. In this stipulation, the debtor had agreed to pay all arrearages, plus any additional amounts as they came due, to the landlord by November 20, 1985.

The debtor operates a chain of retail stores selling pianos, organs, and other keyboard instruments. It entered into a written lease with the landlord, agent for the Equitable Life Assurance Society of the United States, for the commercial premises known as Store No. 6, Building M of the Green Acres Mall. The lease provides for a termination date of September 30, 1992, and also affords the landlord the power to unilaterally terminate the lease upon debtor's default.

Beginning in early 1983, the debtor defaulted on its lease obligations by failing to pay rent, utilities, percentage rate, CAM, taxes, mall publication fees, insurance charges, and Merchant Association dues. The landlord notified the debtor of this default and instituted legal action to collect these sums due, pursuant to lease Article XIX, Section 19.01. However, the landlord and the debtor subsequently agreed upon a repayment schedule for the debtor's payment of all amounts due, and the landlord discontinued legal action.

As a result of the debtor's repeated default on the terms of the repayment schedule, the landlord commenced an action for nonpayment of rent in the Second District Court of the County of Nassau, Hempstead Part. The landlord suspended its legal action against the debtor upon entering into the stipulation agreement noted above.

On September 18, 1985, the landlord sent the debtor a Notice of Termination of Lease, pursuant to Article XIX, Section 19.03 of the Lease, stating that the lease would be terminated as of September 30, 1985. The landlord alleged that the debtor owed arrearages in the amount of $94,-056.98.

## DISCUSSION

A commercial lease that has been terminated by the expiration of its stated term is not included as property of the debtor's estate. 11 U.S.C. § 541(b)(2). Similarly, a landlord's acts to obtain possession of property under such a terminated lease are not enjoined by the automatic stay. 11 U.S.C. § 362(b)(10). The landlord's assertion that it terminated the lease prior to the debtor's bankruptcy filing thus has far-reaching implications that may jeopardize the debtor's fresh start.

As a court of equity, this court is compelled to scrutinize a lease forfeiture that would imperil the debtor's reorganization and impede the Code's rehabilitative goals. *In re Air Vector Associates*, 53 B.R. 668, 687 (Bankr.S.D.N.Y.1985); *accord, Matter of Curio Shoppes, Inc.*, 55 B.R. 148 (Bankr.D.Conn.1985). New York State law complements this directive by looking disfavorably upon lease forfeitures. *In re Fifth Avenue Originals*, 32 B.R. 648 (Bankr.S.D.N.Y.1983). The latter decree is especially significant since this court must

refer to applicable New York State law to determine whether the landlord's Notice of Termination of Lease in fact terminated the landlord-tenant relationship.[1] *In re W.A.S. Food Service Corp.*, 49 B.R. 969 (Bankr.S. D.N.Y.1985), *In re Darwin*, 22 B.R. 259, 6 C.B.C.2d 1245 (Bankr.E.D.N.Y.1982), *accord, In re Air Vector Associates*, 53 B.R. at 668, *In re Onio's Italian Restaurant Corp.*, 42 B.R. 319 (Bankr.S.D.N.Y.1984).

As the landlord notes, a lease may be terminated under New York State law by operation of a conditional limitation. *Grand Liberte Co-op., Inc. v. Bilhaud*, 126 Misc.2d 961, 487 N.Y.S.2d 250 (Sup. 1st Dept.1984); *First Nat. Stores v. Yellowstone Shop. Ctr.*, 21 N.Y.2d 630, 237 N.E.2d 868, 290 N.Y.S.2d 721 (1968). In this manner, the landlord sends the tenant in default a Notice of Termination of Lease, stating that the lease will be deemed terminated upon a specified date due to tenant's default. The lease is thus terminated upon the mere lapse of time, rather than on any further act by the landlord. *Perrotta v. Western Regional Off-Track Betting Corp.*, 98 A.D.2d 1, 469 N.Y.S.2d 504, 507 (A.D. 4th Dept.1983).

This court is required to strictly construe against their draftsman the written instruments that effect a forfeiture. *See, Perrotta*, 469 N.Y.S.2d at 504, *In re Family Showtime Theaters, Inc.*, 58 B.R. 679 (Bankr.E.D.N.Y.1986). Furthermore, the dire consequences resulting from the landlord's unilateral termination of the tenant's leasehold interest demand that a Notice of Termination of Lease strictly conform to the bargained-for lease provisions. *Perrotta*, 469 N.Y.S.2d at 508. In light of these accepted New York State rules of contract construction, the *Perrotta* court found that a landlord's Notice of Termination was insufficient to effectuate a conditional limitation where the notice made no reference to the appropriate lease provision, *Id.* at 507, and did not specify how the tenant was in default. *Id.* at 508.

In the present case, the Notice of Termination of Lease stated that debtor was "substantially in arrears," thus constituting a Deliberate Default of the Debtor's Lease obligations. However, tenant's Deliberate Default is defined in the Lease as something greater than the tenant being substantially in arrears.[2] The Notice failed to detail the manner in which the debtor's acts constituted a Deliberate Default and made no mention of Section 19.02. The Notice therefore lacked an appropriate reference to the violation of any lease provision. This court may not read such a meaning into the Notice, *Id.*, especially where such a strained construction would result in a lease forfeiture that could defeat the debtor's rehabilitative efforts.

■ Accordingly, this court finds that the landlord's Notice did not contain sufficient allegations to effectuate a lease termination pursuant to the conditional limitation in Lease Section 19.03.[3] The landlord's acts to obtain possession of the premises are stayed under 11 U.S.C. § 362(a)(3).

---

**1.** This court need decide whether the landlord's acts constitute a termination of the lease as contemplated by the Code, *see* P.L. 98–353, Statement by the Hon. Orrin G. Hatch, 130 Cong.R. S8891, June 29, 1984, 3 U.S.Code Cong. & Ad.News 590, 600, only if it answers the threshold inquiry in the affirmative.

**2.** Article XIX, Section 19.02, defines "Deliberate Events of Default" as follows:
(a) Notwithstanding anything to the contrary set forth in this Lease, if Tenant shall default (1) in the timely payment of Fixed Minimum Rent, Percentage Rent, Tax Rent, Tenant's proportionate share of Operating Costs, the Utility Charge, or Promotion Charge or in the timely reporting of Gross Sales or any of them, and any such

default shall be repeated two (2) times in any period of twelve (12) months; or (2) in the performance of any other covenant of this Lease more than three (3) times in any period of twelve (12) months, then, notwithstanding that such defaults shall have been cured within the period after notice as above provided, any further similar default within such twelve (12) month period shall be deemed to be a Deliberate Event of Default.

**3.** Since the lease has not been properly terminated, this court need not address itself to the issue raised by the parties as to whether the issuance of a warrant of eviction was necessary to terminate the landlord-tenant relationship.

Whereas the landlord states no other cause for relief from the automatic stay, this court denies the landlord's request for relief from the stay.

The debtor cross-moves for an extension of the statutory 60–day period within which the debtor must decide whether to assume or reject the lease, pursuant to 11 U.S.C. § 365(d)(4).[4] The debtor asserts that such relief is needed on two grounds: 1) the debtor requires additional time to assess the profitability of this location during the "busy season" between Christmas and the end of March; and, 2) the debtor is in the midst of negotiations with third parties to obtain loans which will be used to provide working capital and satisfy post-petition rent obligations. The landlord argues that the debtor's motion is untimely since this court has not granted the debtor's request within 60 days of the order for relief.

This court held in *In re Unit Portions of Delaware, Inc.*, 53 B.R. 83, 13 B.C.D. 635 (Bankr.E.D.N.Y.1985) that it may grant an order for extension of the statutory 60 day period, under 11 U.S.C. § 365(d)(4), after the sixtieth day provided that the debtor has applied for the extension within the statutory period. *Unit Portions*, 53 B.R. at 86. The landlord asks this court to reconsider this ruling in light of two recent bankruptcy court decisions: *In re By-Rite Distributing, Inc.*, 47 B.R. 660, 12 B.C.D. 1082, 12 C.B.C.2d 253 (Bankr.C.D.Utah 1985) and *In re Southwest Aircraft Services, Inc.*, 53 B.R. 805, 13 B.C.D. 814 (Bankr. C.D.Cal.1985). With the district court's subsequent reversal on appeal of the bankruptcy court's *By-Rite* decision, *By-Rite Distributing, Inc. v. Brierley*, 55 B.R. 740 (D.Utah 1985), the landlord's reliance on the above-cited cases is inapt and non-binding.

The bankruptcy court in *Southwest Aircraft Services* relied exclusively on the *By-Rite* decision to conclude that the trustee must obtain a hearing and decision on its motion to extend the statutory period for assuming or rejecting a lease within the 60-day period, otherwise the lease will be deemed rejected. 53 B.R. at 808–09. In *By-Rite Distributing*, the bankruptcy court had found the lease in question to be rejected on the grounds that, although the trustee moved to assume the lease within the 60-day period, the court did not rule on the trustee's motion within the 60-day period. 47 B.R. at 670–71. The district court repudiated the bankruptcy court's interpretation of Congress' intent in enacting the 60-day time limit. *Brierley*, at 743. Moreover, the district court renounced the *Southwest Aircraft Services* conclusion that the filing of a motion is not the equivalent of actually being granted an extension by finding that:

> ... the trustee assumes or rejects the Lease within the meaning of § 365(d)(4) when he makes up his mind to do so and communicates his decision in an appropriate manner, such as by filing a motion to assume ... the trustee's act of assuming the lease is complete for the purposes of § 365(d)(4) before the trustee ever obtains court approval.

*Id.* at 742–743. As the district court continued:

> The bankruptcy court's interpretation of § 365(d)(4) would actually defeat the stated legislative intent by giving the trustee less than the full 60 days to make up his mind. If the trustee had to get court approval within the 60 days, he would have to decide whether or not to assume the lease and file his motion for assumption much earlier.... The result would likely be that trustees would routinely file for extensions of the 60-day period, leading to the very evil that § 365(d)(4) was meant to cure—costly delay.

*Id.* at 744–45.

■ Similarly, if the debtor-in-possession required court approval of its motion for extension within the 60 day period, it would need to initiate such a motion soon after

---

4. The debtor filed an order for relief on October 24, 1985. The debtor then cross-moved to extend the time to assume or reject the Lease on November 29, 1985, within the statutory 60-day period.

the Chapter 11 filing, before it had any opportunity to exercise proper business judgment to assess the value of the lease to the estate. Not only would the reorganization process be confronted with costly delay, but the bankruptcy court would be saddled with *pro forma* motions for extension filed before the trustee could make a reasoned decision as to the need for an extension. This court cannot read § 365(d)(4) so strictly as to encourage such absurd results. *See, Unit Portions*, 53 B.R. at 85. Furthermore, such a conclusion would run contrary to Congress' intent to weed unnecessary delay out of the trustee's decision to assume or reject. 3 U.S. Code Cong. & Ad.News at 598–99 (1984). This court is cognizant of the delays that can stem from the trustee's failure to pursue the assumption or rejection of the unexpired lease. Thus, the trustee will only be granted additional time within which to make its decision for cause, where the trustee is unable to make a careful and informed assessment of the lease's benefits and burdens to the estate within the 60 day period. *Unit Portions*, 53 B.R. at 85.

▮ Accordingly, this court finds that the debtor's cross-motion, brought within the statutory 60-day period, tolls for the purposes of § 365(d)(4) the running of the court's time to grant the debtor's request for an extension. In addition, the court finds that the debtor has established cause for the extension and hereby grants the debtor until April 17, 1986 to assume or reject the lease.[5]

It is SO ORDERED.

---

**5.** This court rejects the notion that it should grant the debtor an open-ended extension to expire upon the confirmation of the Chapter 11 plan. With the enactment of § 365(d)(4), Congress clearly expressed its intent that such a result is untenable. However, since § 365(d)(4) enables the debtor to seek additional time within the original 60-day period, the debtor should accordingly be able to seek further extensions within the extended period upon a showing of

cause. *Accord, In re Ravenna Industries, Inc.,* 20 B.R. 886, 9 B.C.D. 121, 6 C.B.C.2d 1015, (Bankr.N.D. Ohio 1982), *In re Trainer's, Inc.,* 17 B.R. 246, 5 C.B.C.2d 1623 (Bankr.E.D.Pa.1982), *Matter of Lake in the Woods,* 10 B.R. 338, 7 B.C.D. 588, 4 C.B.C.2d 828 (E.D.Mi.1981), where the debtor was able to seek successive extensions of the statutory 120-day period under § 1121(d) upon a showing of cause.