REINHARDT, Circuit Judge:
We are asked here to resolve a question of first impression in the circuit courts regarding the interpretation of section 365(d)(4) of the Bankruptcy Code. 11 U.S.C. § 365(d)(4) (Supp.1985).[1] The Code permits a debtor in bankruptcy to assume or reject any unexpired lease it may have. Id. § 365(a). Under section 365(d)(4), a nonresidential lease is deemed rejected by a debtor-lessee unless that party assumes the *849 lease within 60 days after filing for Chapter 11 protection or within such additional period as is fixed by the bankruptcy court. In the case before us, the debtor-lessee moved, before the initial 60-day period had expired, for an extension of time within which to assume or reject a commercial lease, but the bankruptcy court did not hear the motion until after that period had ended. The court held that the lease was deemed rejected immediately upon the expiration of the sixtieth day, and that it was without authority to grant the timely filed motion for extension. The bankruptcy appellate panel affirmed; we reverse.
I. Facts
Southwest Aircraft Services, Inc., is an aircraft maintenance company located at the Long Beach Airport. Southwest leases its business premises from the City of Long Beach under a long-term lease it assumed in 1976. Several years later, commercial jet flights into the airport increased, and Long Beach leased a vacant parcel adjoining Southwest’s to Atlantic Aviation, which built a jet facility on the newly leased property. Evidently the existence of the new facility resulted in a significant increase in the value of Southwest’s parcel.
Southwest filed for Chapter 11 relief on April 18, 1985, and received permission to operate its business as debtor-in-possession. It then closed its pre-bankruptcy checking accounts and opened a new one in its new capacity. The March and April 1985 rent checks, which were written on an old checking account, were returned to Long Beach unpaid. After filing for Chapter 11 protection, Southwest made no further rent payments to the city.
On June 14, 57 days after filing for Chapter 11, Southwest filed a motion to extend the 60-day deadline for assuming or rejecting its lease with Long Beach. The bankruptcy court did not hear Southwest’s motion until July 17, 90 days after the bankruptcy filing, and 30 days after the 60-day period had ended. At the hearing, Southwest tendered checks to Long Beach for all outstanding rent, which the city refused.
While the bankruptcy judge declared that he would be inclined to grant the extension motion, he concluded that he no longer had authority to do so, ruling that the lease was deemed rejected pursuant to section 365(d)(4) of the Bankruptcy Code. The court found that in order for a debtor-lessee to obtain an extension of time under that section, not only must that party move for an extension within 60 days of filing for Chapter 11 protection, but the court must hear and grant the motion within that period. In re Southwest Aircraft Servs., Inc., 53 B.R. 805 (Bankr.C.D.Cal.1985). Under the bankruptcy judge’s view, rejection was automatic since the 60-day deadline passed before he had held any hearing or issued any ruling on the motion. The Bankruptcy Appellate Panel affirmed, holding that the language of section 365(d)(4) “is precise and leaves no room for arguing that an extension may be granted or confirmed after 60 days have elapsed.” In re Southwest Aircraft Servs., Inc., 66 B.R. 121, 123 (Bankr. 9th Cir.1986). Southwest promptly appealed.
II. Legal Discussion
A. The Proper Interpretation of Section 365(d)(4)
The interpretation of a statute is a question of law which we review de novo. E.g., United States v. Roberts, 747 F.2d 537, 546 (9th Cir.1984). A court’s objective in interpreting a federal statute is to ascertain the intent of Congress and to give effect to its legislative will. E.g., Philbrook v. Glodgett, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). The first place a court looks in determining legislative intent is the language of the statute itself. E.g., United States v. James, — U.S.-, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986); Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).
Here, the meaning of the words of section 365(d)(4) is not entirely clear. The section is not plainly susceptible to only one interpretation, and bankruptcy courts *850 are divided on how the statute should be applied. Section 365(d)(4) provides that any unexpired nonresidential lease is deemed rejected unless the debtor-lessee assumes it “within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes____” 11 U.S.C. § 365(d)(4) (emphasis added). Under the section, the court’s ability to extend the 60-day period is limited by a clause which includes three successive terms: “for cause,” “within such 60-day period,” and “fixes.” It is not entirely clear whether the second term — “within such 60-day period” — modifies the term that precedes it or the term that follows it. If we read it as modifying “fixes”, then a bankruptcy court would not under the literal words of the statute have the authority to grant a timely motion to extend after the sixtieth day. That is the interpretation advanced by Long Beach, as well as by some bankruptcy courts in this and other cases. See In re House of Deals of Broward, Inc., 67 B.R. 23, 24 (Bankr.E.D.N.Y.1986); In re Coastal Indus., Inc., 58 B.R. 48, 49 (Bankr.D.N.J. 1986); In re Taynton Freight Sys., Inc., 55 B.R. 668, 671 (Bankr.M.D.Pa.1985). If, however, the 60-day term modifies “for cause,” then while the cause must arise within 60 days (and implicitly the debtor must file its motion to show cause within that period), there is no express limit on when the bankruptcy court must hear and decide the motion. This more liberal reading of the statute would allow the bankruptcy courts to operate with greater freedom and flexibility. It is the one we adopt.
Several bankruptcy courts have held that the more restrictive interpretation of the statute would lead to arbitrary and fortuitous results and have rejected it for that reason. See In re Wedtech Corp., 72 B.R. 464, 468 (Bankr.S.D.N.Y.1987); In re Musikahn Corp., 57 B.R. 938, 942 (Bankr.E.D. N.Y.1986); In re Unit Portions of Del., Inc., 53 B.R. 83, 84 (Bankr.E.D.N.Y.1985). While we recognize that were we to look only to the face of the statute Long Beach’s argument would by far be the stronger one, we cannot say with certainty that it is the only plausible interpretation of section 365(d)(4). There is another possible interpretation of the statutory language, one that permits a more reasonable construction — a construction that is more consistent with the normal concepts that govern the functioning of the judiciary. Thus, we turn to the legislative purpose and history for whatever guidance they may provide. See, e.g., Blum v. Stenson, 465 U.S. at 896, 104 S.Ct. at 1547.[2]
Like the language of section 365(d)(4), the legislative purpose and history of the section do not provide a definitive answer to the question before us; however, they do offer some support for Southwest’s view. Before 1984, debtors in Chapter 11 reorganizations had no fixed deadline to assume or reject unexpired leases, although any party could request the court to fix a time limit. 11 U.S.C. § 365(d)(2) (1983). Congress became concerned about the practical consequences of Chapter 11 filings by tenants of shopping centers. It was particularly concerned that mall operators were facing periods of extended vacancies, that would last until such time as the bankruptcy courts would finally decide to take the initiative and force debtors to make a choice whether to assume or reject the leases. It was also concerned about the effects the extended vacancies were having on other tenants. See 130 Cong. Rec. S8891, S8894-95 (daily ed. June 29, 1984) (statement of Sen. Hatch), reprinted in 1984 U.S.Code Cong. & Admin.News 576, 590, 598-99.
To address this problem, Congress added two provisions dealing specifically with nonresidential leases in Chapter 11 proceedings. Subsection (d)(3) requires the *851 debtor to perform all lease obligations while deciding whether to assume, but permits the court to delay the debtor’s performance during the first 60 days after filing for reorganization. Subsection (d)(4) establishes the 60-day deadline for assumption or rejection, and imposes on the debtor the burden of petitioning the bankruptcy court for a change in the deadline.
According to the legislative history, the so-called Shopping Center Amendments were expressly intended to
lessen the problems caused by extended vacancies and partial operation of tenant space by requiring that the trustee decide whether to assume or reject nonresidential real property lease [sic] within 60 days after the order for relief in a case under any chapter. This time period could be extended by the court for cause, such as in exceptional cases involving large numbers of leases.
1984 U.S.Code Cong. & Admin.News at 599. This is the sole passage in the legislative history that addresses extensions of time. The second sentence discusses the requirement that the court find “cause” for the extension; there is no reference to any requirement that the bankruptcy judge make his finding within any particular period of time. Congress’ emphasis on cause for an extension, and its failure to mention any deadline within which the court must act, is fairly indicative of its intent. Congress was concerned that a properly supported motion for extension, i.e., one for good cause, should be permitted under the provision and not that the bankruptcy court should be stripped of its authority to grant an extension if it did not act within a prescribed time period.
We recognize that while the legislative history does not specifically mention that the debtor must file its motion for an extension within 60 days, such a requirement may be fairly implied in the section. It is frequently the case that if an act must be undertaken within a particular time period a request for an extension must be made before that period has expired. Such a rule can hardly be said to be unusual or worthy of special discussion in the legislative history. On the other hand, a rule that forfeits a party’s rights, benefits, privileges or opportunities simply because a court fails to act within a particular time period would be quite extraordinary. We think that Congress would not adopt any such rule without clearly indicating in the legislative history its intention to do so and explaining its reasons. Cf. Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), discussed infra, note 6.
We, and other circuits, have previously considered whether to construe another deadline-setting provision in a manner that would deprive a court of jurisdiction to act if it failed to consider a timely filed motion within a prescribed time period. The issue was squarely presented is a series of cases involving the former version of Fed.R. Crim.P. 35 (governing reduction in sentence). One major difference was that Rule 35, unlike section 365(d)(4), was unambiguous. The rule explicitly afforded district courts only 120 days within which to act in order to reduce a sentence. Had the circuit courts given the language of the Rule its literal meaning, we would have been forced to hold that district courts had no jurisdiction to act on pending sentence reduction motions once the 120-day period had expired. However, five of the six circuits that considered the issue refused to do so.[3] This circuit was firmly in the majority.[4] Typical of the circuit courts’ reasoning was Chief Judge Haynsworth’s *852 analysis in his opinion for the Fourth Circuit:
We need not give the Rule so literal a reading, however, and we can not assume that such a reading was intended when the consequences would be so devastatingly and arbitrarily fortuitous. For any number of reasons it may be impossible or impractical for a judge to act promptly upon a motion for reduction of sentence filed with the court long before the expiration of the 120 day period.
United States v. Stollings, 516 F.2d 1287, 1288 (4th Cir.1975).[5]
Similarly here, Long Beach’s interpretation of section 365(d)(4) would produce arbitrary and fortuitous results. Under the city’s view, a diligent debtor with an unexpired lease — oftentimes an asset critical to a successful reorganization — who moved for an extension of time immediately upon filing his petition for relief would nevertheless automatically lose the lease if the bankruptcy court failed, for whatever reason, to decide the motion within a 60-day period. Also, a debtor who diligently attempted to determine whether he could prudently assume the lease, and sought an extension only after he had determined that more time was in actuality required, might find his leasehold interest forfeited if the bankruptcy judge took even a minimal amount of time to conduct a hearing and reach a decision. The results in both instances would be manifestly unjust — and so might the result here. The bankruptcy judge said that he was inclined to the view that Southwest had demonstrated cause for the grant of an extension; yet, under Long Beach’s interpretation, the court would be unable to act, Southwest would be deprived of its place of doing business, and Long Beach might well obtain an undeserved windfall.
Bankruptcy courts, like district courts, may have numerous reasons that make it impractical or impossible for them to act within a fairly short time deadline. Construing Congress' action in adopting section 365(d)(4) as an attempt by the legislative branch to force bankruptcy courts to act at an earlier time than they would otherwise deem proper would not only result in hasty, ill-considered decisions by bankruptcy courts but might in addition exacerbate rather than alleviate the judicial backlog problem. Such an interpretation would also encourage debtors to make pro forma motions for extension of time before they had a full opportunity to consider whether an extension was necessary — conceivably as soon as the petition for reorganization was filed — simply to minimize the possibility that the vagaries of bankruptcy court scheduling would deny them a timely hearing. See In re Wedtech Corp., 72 B.R. at 470; In re Musikahn Corp., 57 B.R. at 941-42. Bankruptcy courts would then be burdened with numerous unnecessary show cause hearings. Moreover, extensions would undoubtedly be granted in cases in which, but for the restrictive interpretation of the provision, requests for extensions would not ever have been made. The cumulative effect might well be even greater delays in deciding assumption of lease issues than previously existed. In any event, Long Beach’s interpretation would impose an arbitrary and unreasonable restriction on bankruptcy courts as well as work an injustice on many debtors.
Our holdings with respect to former Rule 35 are pertinent here. While in our case, unlike the Rule 35 cases, we need not reject the only possible literal reading of the provision at issue in order to reach a reasonable result, we are nevertheless influenced in our decision by the rule announced almost one hundred years ago by the Supreme Court: “If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity.” Church of the Holy Trinity v. United States, 143 U.S. 457, 460, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). This is still good law today. “It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.” Philbrook v. *853 Glodgett, 421 U.S. at 714, 95 S.Ct. at 1898 (quoting Church of the Holy Trinity, 143 U.S. at 459, 12 S.Ct. at 512); see INS v. Cardoza-Fonseca, 107 S.Ct. at 1213 n. 12; United States v. James, 106 S.Ct. at 3121, Consumer Prod. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. at 108, 100 S.Ct. at 2056.
Long Beach’s interpretation of section 365(d)(4) would produce fortuitous and inequitable results. It would also require us to assume that Congress intended to take the most unusual and highly questionable step of interfering with the normal operation of the judicial branch by ordering the termination of jurisdiction over a particular issue whenever a court failed to make a ruling within a brief period. In light of those circumstances, we cannot conclude that the more restrictive interpretation of the section accurately reflects the intent of Congress.[6]
Rather, the interpretation we believe best comports with congressional intent is the one that preserves the authority of the bankruptcy court to rule on timely filed motions. It strikes the balance between creditor protection and debtor relief that Congress intended, and is eminently reasonable, fair and sensible. We fully agree with the bankruptcy courts that have previously adopted that view. In re Wedtech, Corp., 72 B.R. at 469-71; In re Musikahn Corp., 57 B.R. at 942; In re Unit Portions of Del., Inc., 53 B.R. at 84-85.
For all the above reasons, we hold that if cause for an extension arises within the 60-day period and a motion for an extension is made within that period, a bankruptcy court may, even after the 60-day period has expired, consider the debtor’s motion and, if it finds there was sufficient cause at the time the motion was filed, grant the requested extension.
B. The Effect of Violating Section 365(d)(3)
Long Beach makes one other argument beyond its reliance on section 365(d)(4). The city asserts that because Southwest violated section 365(d)(3), by failing to perform its obligations under the lease after filing for Chapter 11 relief, the lease should be deemed rejected as a penalty for the violation. As the bankruptcy court noted, subsection (d)(3) does not expressly state what consequences follow from a debtor’s violation of its terms. Only its companion provision, subsection (d)(4), addresses the circumstances in which a debtor’s nonresidential lease is deemed rejected — and it does not include any reference to a violation of the earlier subsection. Nothing in either subsection, in any other part of the Bankruptcy Code, or in the legislative history of that Code suggests a reading such as is suggested by the city. Of the two cases Long Beach cites in support of its position, In re Barrister of Del., Ltd., 49 B.R. 446 (Bankr.D.Del.1985), and In re Condominium Admin. Servs., 55 B.R. 792 (Bankr.M.D.Fla.1985), the former does not hold or even suggest — directly or impliedly — that non-performance under subsection (d)(3) leads to automatic rejec *854 tion, while the latter does so without citation of authority except for a wholly unsupported reference to “legislative history”.
Long Beach’s interpretation is a draconian one that, like its view of subsection (d)(4), would serve to deprive the court of the ability to make fair and just evaluations of the circumstances. We believe that Congress intended the bankruptcy courts to have the discretion to consider all of the particular facts and circumstances involved in each bankruptcy case and to decide whether the consequence of a violation of subsection (d)(3) should be forfeiture of the unassumed lease, some other penalty, or no penalty at all. Accordingly, we hold that the failure to make payments under subsection (d)(3) constitutes simply one element to be considered, along with all the other relevant factors, in determining whether cause exists under subsection (d)(4) to extend the 60-day period for assumption or rejection. See In re Beker Indus. Corp., 64 B.R. 890, 898 (Bankr.S.D. N.Y.1986). Thus on remand the bankruptcy court shall take Southwest’s failure to make rental payments into account when it hears its motion for extension of time. However, at that time, the court should also consider the fact that Southwest tendered its past due rent at the bankruptcy court hearing on the extension motion.
III. Conclusion
Application of our views on the proper interpretation of sections 365(d)(3) and 365(d)(4) to this case is a straightforward matter. The bankruptcy court retains the authority to decide Southwest’s motion for an extension of time. We reverse and remand so that the court may hear that motion. Southwest’s failure to make proper rental payments does not require that the bankruptcy court deem the lease rejected. That failure should, however, be considered at the hearing, along with all other relevant factors, including Southwest’s previous tender of all sums due.
REVERSED and REMANDED.

. Section 365(d)(4) provides:
Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

. Even were the language of the section unambiguous, because the result urged by Long Beach appears so arbitrary and unfair we would still examine the legislative purpose and history in order to make certain that there was no clear indication of a contrary congressional intent. See INS v. Cardoza-Fonseca, — U.S.-, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987); United States v. James, 106 S.Ct. at 3121; Ford Motor Credit Co. v. Cenance, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981); Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

. The majority view was adopted by the Third, Fourth, Fifth, Ninth and Tenth Circuits. United States v. Johnson, 634 F.2d 94, 97 (3d Cir. 1980); United States v. Stollings, 516 F.2d 1287, 1288 (4th Cir. 1975); United States v. Mendoza, 581 F.2d 89, 90 (5th Cir.1978) (en banc) (per curiam); United States v. DeMier, 671 F.2d 1200, 1205 (8th Cir.1982); for Ninth Circuit cases, see note 4. The minority circuit was the Seventh. United States v. Kajevic, 711 F.2d 767, 768 (7th Cir.), cert. denied, 464 U.S. 1047, 104 S.Ct. 721, 79 L.Ed.2d 182 (1984).

. E.g., United States v. Smith, 650 F.2d 206, 209 (9th Cir.1981); United States v. United States Dist. Court, 509 F.2d 1352, 1356 (9th Cir.), cert. denied, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975); Leyvas v. United States, 371 F.2d 714, 719 (9th Cir. 1967).

. In 1985, Congress amended Rule 35 to conform its language to the interpretation that most circuits had given it. See Fed.R.Crim.P. 35, 1985 Advisory Committee Notes.

. There may also be a constitutional obstacle to interpreting the statute in the manner Long Beach suggests. To hold that a debtor’s right to his leasehold interest in a property is terminated by the bankruptcy court’s failure to hear his timely motion to extend could well raise a due process question. In Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Supreme Court found that it was a violation of due process to terminate an individual’s property interest because of an agency’s failure to hear and decide a timely filed claim within a specified deadline. The Court held that, "A system or procedure that deprives persons of their claims in a random manner, as is apparently true of [the statute], necessarily presents an unjustifiably high risk that meritorious claims will be terminated.” 455 U.S. at 434-35, 102 S.Ct. at 1157. While here the right that Southwest would lose directly is the right to obtain an extension of time in which to decide whether to assume or reject a lease, because the failure to consider the claim before the statutory deadline effectively deprives the debtor of his leasehold interest in property the Logan analysis may well be applicable.
The Speedy Trial Act does not, of course, pose similar statutory or constitutional problems for at least two reasons. One, Congress made its basic intentions with respect to that Act crystal clear. Two, no individual loses any right, benefit, privilege, or opportunity as the result of any of the time restraint provisions of the Speedy Trial Act. See 18 U.S.C.A. §§ 3161-74 (1985).