In re PORT ANGELES WATERFRONT ASSOCIATES, Debtor.

PORT ANGELES WATERFRONT ASSOCIATES, City of Port Angeles, and Security Pacific Savings Bank, Appellants,

v.

PORT OF PORT ANGELES, Appellee.

BAP No. WW–90–1485 MeJR.

Bankruptcy No. 89–06044.

Adv. No. A90–00011.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 21, 1991.

Decided Dec. 9, 1991.

---

Daniel M. Caine, Seattle, Wash., for Port Angeles Waterfront.

William E. Holt, Tacoma, Wash., for Sec. Pacific.

Marc Barreca, Seattle, Wash., for City of Port Angeles.

Gayle E. Bush, Seattle, Wash., for Port of Port Angeles.

## OPINION

Before MEYERS, JONES and RUSSELL, Bankruptcy Judges.

RUSSELL, Bankruptcy Judge:

Sixty days after Debtor–Appellant filed Chapter 11, Appellee gave notice of termination of the lease pursuant to 11 U.S.C. § 365(d)(4). No motion was made by the Debtor within those sixty days to either assume or reject the lease. The parties filed cross motions for summary judgment, each asking for declaratory judgment on whether the lease had been terminated. The bankruptcy court entered summary judgment for the Appellee. Debtor–Appellant and two secured creditors appeal. We affirm.

## FACTS

The facts are not in dispute. On May 14, 1985, Debtor–Appellant Port Angeles Waterfront Associates ("Waterfront") entered into a lease agreement with the Port of Port Angeles ("Port"), a municipal corporation, to construct and then sublease "the Landing," a 48,000 square foot commercial complex including a three-story building, boat ramp and a two-level concrete parking garage. This agreement provided that in the event of termination of the lease, Waterfront would have the option to remove any buildings, structures or fixtures within ninety days.

Waterfront constructed the Landing at a cost of $3.5 million, borrowing $1.9 million from Security Pacific Savings Bank ("Bank") and $400,000 from the City of Port Angeles ("City"). Both loans were evidenced by promissory notes and secured deeds of trust against Waterfront's interest under the loan agreement.

Port had entered into separate agreements with City and Bank providing that if the port lease should be terminated, for any reason, Port agreed to make a new lease of the property to the lenders on the same terms and conditions set forth in the Port lease for the balance of the Port lease term. Further, Port agreed to provide Waterfront, City and Bank with notice of any breach by Waterfront and an opportunity to cure such breach.

On August 18, 1989, Waterfront filed for Chapter 11 relief. The lease agreement and the Landing construction were the Debtor's only substantial assets. Sixty days after the bankruptcy filing, Port gave notice that the lease agreement was terminated pursuant to 11 U.S.C. § 365(d)(4). No motion was made by the Debtor within those sixty days to either assume or reject the lease. The parties filed cross motions for summary judgment, each asking for declaratory judgement on whether the lease had been terminated.

On April 23, 1990, the bankruptcy court granted Port's cross-motion, holding that the lease agreement between Waterfront and Port had been terminated. Waterfront, City and Bank (collectively referred to as "Appellants") now appeal.

## ISSUE

Whether the bankruptcy court erred in granting Port's cross-motion for summary judgment declaring the lease agreement between Waterfront and Port to be terminated by 11 U.S.C. § 365(d)(4).[1]

## STANDARD OF REVIEW

■ An order granting summary judgment is reviewed *de novo*. *In re Pacific Express, Inc.*, 780 F.2d 1482, 1484 (9th Cir.1986); *In re Baird*, 114 B.R. 198, 201 (9th Cir. BAP 1990).

■ The interpretation of section 365(d)(4) is a question of law reviewed *de novo*. *In re Moreggia & Sons, Inc.*, 852 F.2d 1179, 1181 (9th Cir.1988); *In re Holm*, 931 F.2d 620, 622 (9th Cir.1991).

## DISCUSSION

### A. 11 U.S.C. § 365(d)(4) APPLIES TO THIS LEASE

■ The Appellants contend that the subject lease agreement falls outside the operation of 11 U.S.C. § 365(d)(4) because it is not a *bona fide* lease. Citing *In re Moreggia & Sons, Inc.*, 852 F.2d 1179 (9th Cir.1988), the Appellants argue that the substance of this transaction is not that of lessor-lessee and therefore not subject to the requirement to assume the lease within sixty days. The facts presented in *Moreggia* are entirely different from those of the case before us.

In *Moreggia*, at the time of filing bankruptcy, the debtor had no further obligation to pay anything: "Moreggia's interest is a prepaid right of possession for a substantial future term, ... with no *material* future obligations." *Moreggia*, 852

F.2d at 1186 (emphasis included). Moreggia's obligation to pay "rent" had ceased when the lessor retired its bond indebtedness. The agreement in *Moreggia* substantially differs from a typical lessor-lessee transaction in that the lessor's rights of occupancy were in no way contingent or predicated on continuing payment of rent: "The basic rental payments were not related to the value of the possessory right. The bond indebtedness has since been retired." *Moreggia*, at 1184.

Here, the Debtor was required to pay rent based on 1) the pro-rata share of the Harbor Area lease as established by the Washington State Department of Natural Resources and 2) a percentage of sublease income including 7% of all professional office subleases, 1% of gross sales for retail subleases, 0.75% of gross restaurant revenues up to $1.5 million and 1.5% thereafter, with a minimum rent of $15,000 per year. The rent was subject to renegotiation every five years.

The remaining provisions of the lease are typical of a landlord-tenant relationship. We see no similarity to the agreement found by the *Moreggia* court to be outside § 365(d)(4) because the *Moreggia* agreement required no material future obligations. The Debtor here has all the usual obligations of a tenant. The Appellants' efforts to minimize them are unconvincing. This agreement is subject to the provisions of § 365(d)(4).

### B. *MOREGGIA* DOES NOT EXTEND EQUITABLE CONSIDERATIONS TO PREVENT FORFEITURES UNDER 11 U.S.C. § 365(d)(4)

Contrary to the Appellants' broad reading, the *Moreggia* court did not apply equity to avoid a forfeiture resulting from the application of § 365(d)(4). The *Moreggia* court's invocation of equitable powers was much more narrow. The *Moreggia* court "invoked its equitable powers **to look through the form to the substance of the transaction.**" *In re Moreggia & Sons*, 852

---

1. Unless otherwise indicated, all section references are to the Bankruptcy Code, 11 U.S.C.

§§ 101–1330.

F.2d 1179, 1185–86 (9th Cir.1988) (emphasis added). The *Moreggia* ruling was simply that the lease in question was not a *bona fide* lease subject to § 365(d)(4). *Moreggia* should not be so broadly interpreted as to permit circumvention of the straightforward provisions for assumption or rejection of unexpired leases.

To apply equitable considerations to avoid a forfeiture where a debtor fails to assume a lease under 11 U.S.C. § 365(d)(4) would be to gut this section of the Code. There is *always* a forfeiture of the lease under § 365(d)(4) and contrary to the dissent's position, there is no forfeiture exception under § 365(d)(4).

## C. REJECTION OF THE LEASE IS TERMINATION OF THE LEASE

The argument that the Debtor failed to give the Appellants notice and an opportunity to cure is without merit. *There was no breach of the lease.* All payments due under the lease were current. There was no default for the Appellants to cure.

█ When the Debtor failed to assume the lease within the 60 day deadline, the lease was deemed rejected as a matter of law. 11 U.S.C. § 365(d)(4). The Ninth Circuit has clearly ruled on the issue in this case: once rejected, the lease was terminated. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1080 (9th Cir.1989).

The Debtor was then obligated to surrender the premises to the lessor. 11 U.S.C. § 365(d)(4). The Appellants' argument that the lease was not "terminated" because the lease provides the Debtor 90 days to dismantle and remove the buildings it had constructed is also without merit. The Debtor uses this lease provision to bootstrap its argument by asserting that because immediate surrender after rejection of the lease is not enforceable legally or practically, termination is not possible.

This lease provision only comes into effect upon *termination* of the lease. By applying circular reasoning, the Debtor is attempting to use a post-termination right to assert that the lease may not be terminated by virtue of that provision. Inclusion of the lease provision allowing the Debtor 90 days to dismantle its improvements does not prohibit application of § 365(d)(4) to this lease. The Debtor got exactly what it bargained for in the lease agreement.

In summary, the facts of this case are straightforward—the Debtor failed to assume the unexpired lease. Under the Code, it is deemed rejected and terminated and the Debtor is obligated to immediately surrender possession. The fact that the Debtor is unable to remove its improvements is irrelevant to the operation of the provisions of § 365(d)(4).

## CONCLUSION

We find that Waterfront's failure assume or reject the lease within the sixty days prescribed by 11 U.S.C. § 365 effectively terminated the lease agreement. We find that the bankruptcy court did not err in granting summary judgment and accordingly AFFIRM.

JONES, Bankruptcy Judge, dissenting:

I would find that § 365(d)(4) is inapplicable to the instant case, and that Waterfront's failure to assume or reject within sixty days did not terminate the agreement ("the Agreement") between Waterfront and Port. Alternatively, if the Agreement was found to be a lease, I would find that Waterfront's failure to assume was merely an abandonment or breach, not a termination of all leasehold interests. Therefore, I respectfully dissent.

We should look to the economic substance of a transaction, not its label, to determine whether it is a lease. *In re Harris Pine Mills*, 862 F.2d 217, 220 n. 5 (9th Cir.1988); *Moreggia*, 852 F.2d at 1182. I believe, pursuant to *Moreggia*,[1] that the instant transaction was not a § 365(d)(4)

---

1. In *Moreggia*, businesses displaced by a city redevelopment project were granted twenty-year "leases" in a new area with options to extend for thirty more years. Monthly payments were set at $275 until the bonds sold to finance the project were paid in full. The *Moreggia* court found § 365(d)(4) inapplicable to its facts.

lease: (1) because it lacked the requisite landlord-tenant relationship; (2) because the Debtor had only *de minimus* executory burdens; (3) because the intent behind § 365(d)(4) was inapplicable; and (4) because of equitable considerations.

### 1. *Landlord/Tenant Relationship*

The Agreement taken as a whole shows an intent to impose obligations and confer rights significantly different from those arising from the ordinary landlord/tenant relationship. *See Moreggia*, 852 F.2d at 1184. In the ordinary lease, the landlord allows the tenant to use valuable property during incremental time periods in exchange for incremental payments. In the instant case the Port's property had little if any value until improved by Waterfront. Those improvements had approximately a sixty year life—the term of the Agreement.

An agreement which requires the tenant to pay for the entire value of a fee interest in the property up front can hardly be called an ordinary lease. Furthermore, the Agreement is unlike a lease in that it is supported by collateral agreements providing that creditors can cure any default and create a new agreement with identical terms.

### 2. *Executory Burdens*

A typical lease provides ongoing executory burdens requiring the lessee to make incremental payments and the lessor to provide incremental value. In the instant case the building of the Landing and the resulting contribution to the development and economic life of the waterfront community was the greater part of Waterfront's bargained-for performance. Waterfront's only continuing executory burden was to make minimal monthly payments which

were *de minimis* when compared to the remaining possessory interest in the premises,[2] just as in *Moreggia*.[3]

### 3. *Intent Behind § 365(d)(4)*

The *Moreggia* court asked whether the purposes underlying § 365(d)(4) would be served by including the agreement within its provisions. 852 F.2d at 1185. Congress enacted § 365(d)(4) because of concern over shopping center vacancies which often lasted until debtors were forced to assume or reject their leases. *In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216, 220 (9th Cir.1990). The *Moreggia* court found § 365(d)(4) inapplicable to its facts because the complaining party had suffered no delay, uncertainty, or other harm as a result of the Debtor's failure to assume or reject.

In the instant case Port suffered no delay, uncertainty, or other harm during the sixty days following Waterfront's bankruptcy filing. Waterfront paid rent each month before and after the bankruptcy filing. It did not vacate the premises, and in fact indicated to Port representatives its plan to continue its relationship with Port under the Agreement. Therefore, the intent behind § 365(d)(4) to prevent delay and uncertainty would not be served by treating the Agreement as a *bona fide* lease.

### 4. *Equitable Considerations*

The *Moreggia* court examined equitable considerations and determined that the debtor had fulfilled all of its material obligations under the agreement and that forfeiture would be inequitable. In the instant case Port argues for a $3.5 million forfeiture under circumstances similar to *Moreggia*. Such a forfeiture would be grossly inequitable.[4]

---

**2.** The minimum monthly payment after construction was $1,500 or $18,000 per year. An additional amount was owed based on a percentage of income from leasing out the Landing. The cumulative minimum monthly payments total $1.08 million over sixty years, the present value of which is *de minimis* compared with the Landing's present value of approximately $3.5 million.

**3.** The *Moreggia* court found that the agreement in question no longer carried executory burdens—the remaining financial obligations of $275 per month being *de minimis* relative to the $210,000 value remaining in the property. 852 F.2d at 1184.

**4.** Equitable arguments alone are not enough to warrant a new or different interpretation of § 365(d)(4). *Sea Harvest*, 868 F.2d at 1080. However, equitable arguments can be con-

In summary, the Agreement should not fall within the scope of § 365(d)(4) pursuant to the four criteria set up by *Moreggia*.

### 5. Lease Termination

Finally, even if the Agreement was a lease, and even if it was deemed rejected, it was not necessarily terminated as to all parties with leasehold interests. Rejection of an unexpired lease is an abandonment or a breach—not a termination. Section 365(d)(4) does not use the term "termination" of the lease, but rather requires immediate "surrender" of the leasehold. *See* 2 *Collier on Bankruptcy* ¶ 365.08 (15th ed. 1991). The majority believes that the Ninth Circuit held otherwise in *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1081 (9th Cir.1989). However, the instant case can be distinguished on its facts from *Sea Harvest*.

In *Sea Harvest*, a Chapter 11 debtor failed to make a proper motion to assume or reject its lease within 60 days as required by § 365(d)(4). But unlike the instant debtor, the debtor in *Sea Harvest* "was substantially in default on its annual rent payments." *See id.* at 1080. Furthermore, the debtor in *Sea Harvest* surrendered the leased property, thereby effectively "terminating the enterprise that operates there." *Id.* at 1080–81.

The entire enterprise of the debtor in *Sea Harvest*, including its value, was found in the real estate which was surrendered. In this case, the debtor, Waterfront, created the majority of value in the property and had a right to remove the improvements: Waterfront was not required to surrender the Landing for 90 days, during which time it could remove its improvements and otherwise remain in business. This distinction is also crucial. *Sea Harvest* holds only that surrender equals termination. A "deemed rejection" without surrender is simply an abandonment or a breach. 2 *Collier* ¶ 365.08.

Therefore, if there was a lease, it was not terminated but merely abandoned or breached by Waterfront's failure to assume.[5] Bank and City should be given the opportunity to cure the breach or reform the contract pursuant to the terms of the Agreement or related agreements.

---

sidered as one aspect of a total analysis in determining the inapplicability of § 365 pursuant to *Moreggia*.

**5.** Waterfront could seek restitutionary recovery under an unjust enrichment theory if its failure to assume constituted a breach of the Agreement. Using a theory of *quantum meruit*, a breaching party can recover the value of a benefit conferred in excess of the non-breaching party's damages.