D.W. NELSON, Circuit Judge:
This case involves Chapter 11 debtors James F. George, III, and Margie R. George (“the Georges”). The Georges appeal the district court’s order affirming the bankruptcy court’s rulings. The bankruptcy court found that the Georges rejected their lease with the City of Morro Bay (“the City”) under 11 U.S.C. § 365(d)(4) and that the City did not waive the right to assert that the lease had been rejected. The Georges argue that Section 365(d)(4) does not apply to the lease. Further, the Georges claim that the City waived its rights under Section 365(d)(4) and should be estopped from pursuing a surrender order. We hold that the agreement with the City is a true lease under Section 365(d)(4). We also find that the City did not waive its rights and that there are no grounds for estoppel. We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

In August 1987, the Georges entered a 30-year agreement, referred to as a lease in the agreement, with the City regarding waterfront property known as the Harbor Center Project (“the property”). The property and the agreement are subject to administration under the so-called California Tidelands Trust Doctrine. See Marks v. Whitney, 6 Cal.3d 251, 258 n. 5, 98 Cal.Rptr. 790, 491 P.2d 374 (1971) (in bank) (“The state holds tidelands in trust for public purposes, traditionally delineated in terms of navigation, commerce and fisheries.”)
The agreement provides for public access to the land and water of Morro Bay Harbor and requires the Georges to provide access to the tidelands and accommodations for the public. At their own expense and in accordance with the agreement, the Georges constructed and maintained pierage, docks, quays, and restrooms for the benefit of the public. The Georges also constructed commercial buildings that contained a restaurant, gift *887 shops, clothing shops, and a cinnamon roll shop.
On June 7, 1994, the Georges filed for bankruptcy protection under Chapter 11 with the United States Bankruptcy Court for the Central District of California. The Georges, however, failed to assume the lease for the property under the bankruptcy within 60 days as required by 11 U.S.C. § 365(d)(4). Section 365(d)(4) states that if the debtor fails to assume or reject the lease within the 60 days, the “lease is deemed rejected and the Trustee shall immediately surrender such non-residentiál real property to the lessor.” 11 U.S.C. § 365(d)(4).
After the Georges filed for bankruptcy, but before the 60-day deadline passed, the semi-annual rent payment to the City came due on July 1, 1994. The Georges were unable to pay the $14,205.52 demanded by the City. On August 1, 1994, the Georges paid the City $4,735.14, representing rent for the months of July and August. On August 12, after the 60-day time period elapsed, the City demanded that the Georges pay the remainder of the past due rent and a percentage of gross sales rent. On August 26, 1994, the Georges tendered, and the City accepted, this payment in full.
Three months after the Georges’ payments, the City filed a motion for surrender of the property pursuant to Section 365(d)(4). Before the bankruptcy court ruled on this motion, however, the Georges filed a motion attempting to assume the lease despite the lapsed deadline. The Georges argued that the lease was not a “true” lease under Section 365(d)(4) because of “peculiar property interests,” that the City waived its rights under Section 365(d)(4) by accepting payments after the passage of the 60-day deadline, and that equity required the court to grant them relief. The bankruptcy court granted the City’s motion to surrender the property and rejected the Georges’ motion to assume the lease.
The Georges appealed these rulings to the district court. The district court remanded the case to the bankruptcy court for factual findings on whether or not the City showed an intent to waive its rights under Section 365(d)(4) by accepting the final payments from the Georges. On remand, the bankruptcy court made findings that the City had accepted the rent payment without full knowledge that the Georges had let the 60-day period pass and that the City did not have the intention of waiving its rights under Section 365(d)(4). The bankruptcy court also found that the City had a good faith belief that the rents it sought were post-petition rents to which it was entitled. The bankruptcy court once again granted the City’s motion for surrender of the property. The Georges again appealed to the district court. The district court affirmed the bankruptcy court on all grounds. The Georges appealed this decision to this court.

II. STANDARD OF REVIEW

The role of the district court and this court are basically the same in the bankruptcy appellate process. See Microsoft Corp. v. DAK Indus., Inc. (In re DAK Industries, Inc.), 66 F.3d 1091, 1094 (9th Cir.1995). Therefore, we review the bankruptcy court’s decision directly. See id. We review the bankruptcy court’s findings of fact for clear error, and its conclusions of law de novo. See id.

III. DISCUSSION

In this appeal, the Georges challenge the district court’s ruling affirming the bankruptcy court’s order wherein the bankruptcy court granted the City’s motion for a surrender order pursuant to Section 365(d)(4).
We resolve all of the Georges’ remaining claims in this appeal in a memorandum disposition filed contemporaneously with this opinion.

*888
A. Applicability of Section 365(d)(1)

The Georges contend that their agreement with the City was not a lease but rather a “development agreement” under the California Tidelands Trust Doctrine and therefore is not subject to the requirements of Section 365(d)(4). The Georges primarily rely on our decision in City of San Francisco Mkt. Corp. v. Walsh (In re Moreggia & Sons, Inc.), 852 F.2d 1179 (9th Cir.1988). The facts of Moreggia, however, are easily distinguishable from this case. In Moreggia, the agreement involved the right to occupy two vending stalls in a building constructed using redevelopment bonds. See id. at 1180. The “rent” was not related to the value of the possessory right but rather was collected only as needed by the city to repay the bonds. See id. at 1184. At the time of the bankruptcy filing, the debtor no longer had an obligation to pay rent. See id. at 1180.
The Moreggia court affirmed a bankruptcy court decision that the lease in question was not subject to Section 365(d)(4). See id. at 1181. The court focused on the “economic realities” of the agreement, id. at 1182, and relied on its finding that “[n]o true landlord/tenant relationship was ever intended or created.” Id. at 1184. The Moreggia court also stressed that the debtor’s remaining obligations were few, while its possessory interest was large. See id. The Moreggia court held that “the purpose of Section 365(d)(4) is to protect lessors from delay and uncertainty by forcing the trustee or debtor-in-possession to act quickly to assume unexpired leases.” Id. at 1185 (citing Southwest Aircraft Servs., Inc. v. City of Long Beach (In re Southwest Aircraft Servs., Inc.), 831 F.2d 848, 850 (9th Cir.1987)). In Moreggia, the lessor had no expectation of further income from the debtor because there was no further payment obligation. Thus, the primary uncertainty that would exist under an ordinary lease — whether the debtor would pay the rent — was not present in that case.
The facts of the case at hand are very different. The agreement between the Georges and the City had all the indicia of a landlord/tenant relationship. The Georges were required to pay rent over the course of the 30-year agreement, and the rent was tied to the Consumer Price Index and the fair market value of the property. There were penalties for late rental payments, and the Georges were required to put up a security deposit. Additionally, the Georges have no fee title to the land, and the agreement specifically notes that the lessor will take control of the land should the lease be terminated and take title to the improvements if they are not removed within 60 days of termination. In this case, the purposes of Section 365 are met by protecting the City, as lessor, from delay and uncertainty.
Notably, a case from the Ninth Circuit Bankruptcy Appellate Panel with almost identical facts also found that Section 365 is applicable to this type of agreement. In Port Angeles Waterfront Assocs. v. Port of Port Angeles (In re Port Angeles Waterfront Assocs.), 134 B.R. 377 (9th Cir. BAP 1991), the appellants failed to assume their lease within the 60-day time period. The fifty-year lease involved waterfront property on which the tenant had built the structures and sub-leased portions of them. The BAP found the agreement to be a “true lease” under Section 365(d)(4). See id. at 379. We find the BAP’s narrow reading of Moreggia in Port Angeles Waterfront Associates persuasive.
For these reasons, we hold that the agreement between the Georges and the City was a lease pursuant to Section 365(d)(4).

B. Waiver and Estoppel

The Georges next claim that because the City both demanded and accepted rent from them after the 60-day period to assume or reject had expired, it waived its rights under Section 365. Furthermore, the Georges claim that the City *889 should be estopped from bringing the motion for a surrender order. We disagree.
Section 365 was substantially amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333. Since these amendments, this court has not addressed the issue of whether the equitable doctrines of waiver and estoppel are available to prevent lease forfeitures under Section 365(d)(4). Bankruptcy courts from this circuit have disagreed over whether waiver is an option under Section 365(d)(4). Compare In re VMS Nat’l Properties, 148 B.R. 942, 944 (Bankr.C.D.Cal.1992) (finding that the lessor waived its rights under Section 365(d)(4) by accepting pre-petition rents) with In re Chandel Enters., Inc., 64 B.R. 607, 610 (Bankr.C.D.Cal.1986) (“If either waiver or estoppel were applicable, the Congressional intent in enacting the 1984 amendments, eliminating uncertainty regarding the status of nonresidential leases and requiring the debtor-in-possession to take affirmative action to assume the lease, would be circumvented.”) (citation omitted). Outside of this circuit, the authority is similarly divided. Compare In re Car-Gill, Inc., 125 B.R. 133 (Bankr.E.D.Pa.1991) (lessors can waive application of Section 365(d)(4) by post-rejection conduct), and Bethesda-Union Soc’y of Savannah, Inc. v. Austin (In re Austin), 102 B.R. 897 (Bankr.S.D.Ga.1989) (same), and In re T.F.P. Resources, Inc., 56 B.R. 112 (Bankr.S.D.N.Y.1985) (same), with In re Re-Trac Corp., 59 B.R. 251, 256 (Bankr.D.Minn.1986) (waiver doctrine not applicable), and In re Las Margaritas, Inc., 54 B.R. 98 (Bankr.D.Nev.1985) (same). The Eleventh Circuit has applied the principles of waiver and estoppel to rights related to unexpired leases, although not to Section 365 explicitly. See Ranch House of Orange-Brevard, Inc. v. Gluckstern (In re Ranch House of Orange-Brevard, Inc.), 773 F.2d 1166, 1169 (11th Cir.1985) (“We are thus unwilling to limit as a matter of law a bankruptcy court’s power to employ equitable doctrines of estoppel and waiver in adjudicating the rights of parties to an unexpired lease.”).
We need not reach, however, the general question of whether a lessor’s post-rejection conduct can waive the automatic rejection under Section 365(d)(4), because it does not affect the outcome in this case. Even assuming arguendo that waiver is possible under Section 365(d)(4), we find that the City did not waive its rights to enforce the rejection against the Georges.
To find that the City waived its rights under Section 365(d)(4), we would need to find “(1) the existence at the time of the waiver of a right, privilege, advantage or benefit; (2) the actual or constructive notice thereof; and (3) the intention to relinquish such right, privilege, advantage or benefit.” In re VMS Nat’l Properties, 148 B.R. at 944. See also In re THW Enters., Inc., 89 B.R. 351, 356 (Bankr.S.D.N.Y.1988) (defining a waiver as “an intentional relinquishment of a known right”).
In this case, there is no evidence that the City intended to relinquish its right to pursue a surrender order. On remand, the bankruptcy court made specific factual findings to address this factor. The bankruptcy court found that the City “did not, at any time or by any conduct, intentionally relinquish its right to have Debtors assume their lease of non-residential real property through the filing of a motion under [Section] 365(d)(4).” Furthermore, the bankruptcy court found that the City had a good faith belief that the rents it sought were post-petition rents to which it was entitled under Section 365(d)(3).- After a thorough review of the record, we hold that these findings were not clearly erroneous. Therefore, the City did not waive its right to pursue a surrender order under Section 365(d)(4).
Next, the Georges argue that the City should be equitably estopped from asserting its rights under the code. Again, we need not decide whether the equitable doctrine of estoppel is available under Section 365(d)(4), because there are no *890 grounds for estoppel in this case. The bankruptcy court made express findings of fact that “[t]here was no inéquitable activity on the part of the [City] in the handling of this matter.” Furthermore, the bankruptcy court found that the Georges “did not act diligently to protect their interest in the lease” and that the Georges have “unclean hands” due to a misrepresentation their attorney made to the City. Based on a careful review of the record, we hold that these findings were not clearly erroneous. Thus, equitable estoppel is not available to the Georges in this case.

TV. CONCLUSION

For the reasons set forth above, the district court is affirmed. Section 365(d)(4) does apply to this agreement. Furthermore, we need not decide whether the equitable doctrines of waiver and es-toppel are available under Section 365(d)(4). In this case, the City did not intentionally relinquish its rights under Section 365(d)(4) and there are no grounds for estoppel.
AFFIRMED.