WORLD OF FOOD, INC., et al., Respondents, *v.* NEW YORK WORLD'S FAIR 1964–1965 CORPORATION, Appellant, et al., Defendants.

First Department, December 17, 1964.

*Charles F. Preusse* of counsel (*William T. Farley* and *John V. Thornton* with him on the brief; *Whitman, Ransom & Coulson,* attorneys), for appellant.

*Martin Kleinbard* of counsel (*Allan Blumstein* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for Thomas J. Lipton, Inc., respondent.

*Herman L. Weisman* of counsel (*Steven J. Kumble* with him on the brief; *Amen, Weisman & Butler,* attorneys), for World of Food, Inc., and others, respondents.

*Per Curiam.* The defendant, New York World's Fair 1964–1965 Corporation (the Fair Corporation), appeals from a judgment in favor of plaintiffs which enjoined it from interfering with the construction on its fair grounds of the World of Food Pavilion and which reserved to the plaintiffs the right to apply for an " award of damages as alternative equitable relief in the event that injunctive relief proves impracticable." The injunctive provisions of the judgment have become academic in that, upon a stay thereof by order of this court, the Fair Corporation took possession and demolished the incomplete framework of the proposed pavilion building. There remains for determination, however, the question of whether or not the plaintiffs did establish a case, including a right to a recovery of money damages allegedly caused by wrongful conduct of the defendant.

We have concluded that the defendant Fair Corporation was entitled to and did effectively cancel, as of January 16, 1964, the lease with the plaintiff, World of Food, Inc. (Food, Inc.). As of such date, Food, Inc., as lessee, was clearly in default with respect to its covenant to proceed with the construction of the proposed pavilion building with due diligence to the end that it be substantially completed and ready for occupancy and display purposes by the opening of the Fair in April, 1964, and it had failed to comply with the time schedule of construction work agreed upon in Amendment No. 1 to the lease. As of September 9, 1963, it had acknowledged in writing, in Amendment No. 2 to the lease, that it was in default under its covenants for processing the construction work and that the Fair Corporation had the absolute right to terminate the lease immediately. By the provisions of Amendment No. 2, it had agreed to work out " [a] written and detailed description of a plan of financing for the entire Project, showing funds adequate to complete the Project and definitive and unconditional agreements for the provision of the necessary funds." But, as of December 16, 1963, as acknowledged by it in Amendment No. 3 to the lease, it had " not yet worked out any plan of financing." Then, having been given by the terms of Amendment No. 3 and by forbearance thereafter, until January 15, 1964, to submit a reasonably workable plan for financing, it failed to do so. We have concluded that the plan, including the documents, data, and details ultimately presented by Food, Inc. to the Fair Corporation at the meeting on January 15, 1964, was not adequate to insure the proper financing of the project or the substantial and timely completion of the construction of the proposed pavilion building. In any event, the Fair Corporation had a

right to and did properly conclude that the plan as submitted was not feasible and was unsatisfactory, and the Fair Corporation so determined in good faith.

In view of the foregoing, the plaintiff, Food, Inc., failed to establish a cause of action for any relief against the defendant, Fair Corporation. Also, upon the evidence, we have concluded that the intervening sublessee plaintiffs were not entitled to judgment. The rightful cancellation by the Fair Corporation of its lease with Food, Inc. resulted in the termination of any rights of these plaintiffs dependent upon their subleases with Food, Inc. " A subtenant's rights are measured by those of his immediate landlord, the sublessor, and by its own terms the cancellation of the lease as to one cancels it as to both." (34 N. Y. Jur., Landlord and Tenant, § 270, p. 77. See, also, *Hoffmann Brewing Co.* v. *Wuttge,* 234 N. Y. 469, 474, rearg. den. 235 N. Y. 558.)

The amendatory agreements between the Fair Corporation and the lessee, Food, Inc., did not operate to cut down the interest and estate of the lessee in a manner derogatory to any of the rights of the sublessees. (Cf. *Eten* v. *Luyster,* 60 N. Y. 252.) From the time of the first amendatory agreement (Amendment No. 1) to and including the occasion of Amendment No. 3, the tenancy of Food, Inc. was subject to termination by virtue of breaches by it of the terms and conditions of the basic lease. The Amendments (Nos. 1, 2 and 3) to the lease, entered into for the purpose of enabling Food, Inc. to cure its breaches and defaults and to continue its tenancy, did not have the effect of materially altering the terms and conditions of the lease to the detriment of the sublessees. Each of the amendments enlarged the rights of the lessee in the sense that, by virtue thereof, the then existing right of the Fair Corporation to terminate the tenancy under such terms and conditions was temporarily waived. Finally, when the Fair Corporation acted, as it did, on January 16, 1964, to cancel the lease, Food, Inc. had been given ample time, after notice, to comply with the terms of the lease notwithstanding that the lease only provided for a 10-day period for compliance after notice of default. The action of the Fair Corporation then taken was fully authorized on the basis of its rights, fully reserved, for the breach of the provisions of the original lease, as well as on the basis of breaches of the amendatory agreements.

Finally, the record does not entitle the intervening plaintiff sublessees to any relief on the theory of equitable estoppel. They knew or were chargeable with notice that the construction of the pavilion building was seriously lagging. On September

11, 1963, the sublessee, Thomas J. Lipton, Inc., was notified by letter from the Fair Corporation that Food, Inc. was in default under its lease in the matter of processing the construction work and the letter invited it to consult with the Fair Corporation, but Lipton, Inc. did not contact the Fair Corporation in response to the letter. All sublessees knew or had ready means of acquiring knowledge of existing on-the-ground conditions and knew or should have known that, with the construction barely started, no work at all took place in September and October, 1963, and that very little work was done thereafter until December 16, 1963, when erection of steel framework was started. Then, too, they should have known of the difficulties Food, Inc. was facing in financing the project. On October 15, 1963, they were put on notice by a letter from Food, Inc. that it was required to furnish a commitment for the financing of the pavilion building.

Furthermore, the sublessees were chargeable with notice of and are bound by the terms of the underlying lease, which is the source of their title and alleged rights. (See 51 C. J. S., Landlord and Tenant, § 48, subd. a, par. [1], p. 578.) The fact is that the lease expressly provided that each sublessee should agree in writing that its sublease was subject to the provisions of the lease. Accordingly, inasmuch as the sublessees had notice of or ready means of acquiring knowledge of the true facts with relation to existing conditions and the rights and obligations of the lessor and lessee, the essential elements for the application of the doctrine of equitable estoppel are lacking. (See 21 N. Y. Jur., Estoppel, §§ 60, 61, 63, 66; 31 C. J. S., Estoppel, § 71.) They were bound to anticipate that the Fair Corporation might act to cancel the lease for the failure of Food, Inc. to process the construction with reasonable diligence and as agreed upon. They had no right to rely upon representations or assurances of Food, Inc. with relation to financing or construction. By the very terms of the basic lease, binding upon them, it was provided that the Fair Corporation was not to be responsible in any way to any sublessee exhibitor for any obligation of Food, Inc. to them. The sublessees had no right to assume, on the basis of assurances or obligations of Food, Inc., not binding on the Fair Corporation, that it would not exercise its right of cancellation. They may not invoke the doctrine of equitable estoppel to avoid the consequences of a cancellation fully authorized by the terms and conditions of the lease which were binding upon them.

The judgment herein, in favor of the plaintiffs, should in all respects be reversed and vacated, on the law and the facts, with

costs to the defendant-appellant, and the complaint of the plaintiff, and the complaints of the intervening plaintiffs, should be dismissed, with costs. Findings and conclusions of the trial court inconsistent herewith are reversed and vacated, and new findings of fact are made as herein indicated.

RABIN, J. P., McNALLY, EAGER, STEUER and WITMER, JJ., concur.

Judgment in favor of plaintiffs unanimously reversed and vacated, on the law and on the facts, with $50 costs to defendant-appellant, and the complaint of the plaintiff, and the complaints of the intervening plaintiffs dismissed, with costs. Findings and conclusions of the trial court inconsistent with the opinion *Per Curiam* of this court filed herein are reversed and vacated, and new findings of fact are made as therein indicated. Settle order on notice.