**In the Matter of STERLING NAVIGATION CO., LTD., Bankrupt.**

**COUNCIL COMMERCE CORPORATION, Plaintiff,**

v.

**STERLING NAVIGATION CO., LTD., et al., Defendants.**

**No. 75 B. 1955.**

United States District Court, S. D. New York.

Dec. 23, 1977.

Zalkin, Rodin & Goodman, New York City, for the trustee in Bankruptcy; Richard S. Toder, Andrew D. Gottfried, New York City, of counsel.

Richard Frank, P. C., New York City, for plaintiff-appellant; Richard Frank, Charles P. Axelrod, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, Council Commerce Corporation ("Council"), appeals from the order of Bankruptcy Judge Ryan denying, after trial, the relief sought by Council against Sterling Navigation Co., Ltd. ("Sterling"), a bankrupt Bahamian corporation. Council has presented a number of issues for review involving certain evidentiary rulings of Judge Ryan and alleged errors in his findings of fact and conclusions of law. Before discussing each of the points raised by Council, a brief review of the undisputed facts would be helpful.

Sterling was organized in 1967 for the purpose of carrying on the business of chartering vessels and booking cargoes. Sovereign Marine Lines, Inc. ("Sovereign") a New York Corporation, was the general agent for Sterling, authorized to charter, sub-charter, and conduct the business of chartered vessels. (Plaintiff's Exh. 6). Council is a New York Corporation engaged in the business of making secured loans.

On September 5, 1975, Marvin Buchner, president of Council, met with Joseph De-Carlo, an officer of Sovereign, to discuss a possible loan by Council to either Sovereign or Sterling. DeCarlo told Council that Sovereign was authorized to execute a promissory note and security agreement on behalf of Sterling. The loan was advanced on September 24, 1975, following DeCarlo's execution of a security agreement on behalf of Sterling, granting Council a security in-

terest in all assets, rights and interests presently, or thereafter existing or arising in Sterling. The money was first credited to Sterling's account but was immediately withdrawn and deposited in Sovereign's account. Most of the $230,000 was used to pay Sterling's debts. Council did not obtain resolutions from Sterling's Board of Directors authorizing the loans, but rather, apparently relied on the representations of Mr. DeCarlo that he had authority to enter into the loan transactions.

Following Sterling's filings under Chapter XI of the Bankruptcy Act, Council sought to enforce the alleged security interest against Sterling's Trustee in Bankruptcy. Judge Ryan held a trial and, after evaluating all the evidence, concluded that Council's loan was not authorized by Sterling and that, accordingly, it could be avoided by the Trustee.

█ Council maintains as its first point on appeal that Judge Ryan erroneously excluded from evidence the transcript of Arne Fronsdal, Chief Operating Officer and Chairman of the Board of Sovereign, and recently appointed president of Sterling, given in the course of a hearing held under Rule XI–4 of the Bankruptcy Rules for the Southern and Eastern Districts (Local Rules). At the time of the Rule XI–4 hearing on December 12, 1975, Fronsdal had been president of Sterling for about one week and had held no position in that company during the time of the loan transaction in question. Council offered the Rule XI transcript to show Fronsdal's beneficial ownership of Sterling's shares. As such a beneficial owner, Council urges, Fronsdal "authorized, directed and empowered Mr. DeCarlo to proceed with the loan transaction on Sterling's behalf." (Plaintiff's Memorandum on Appeal at 21). Council seeks to admit this testimony as either former testimony under Rule 804(b)(1) of the Federal Rules of Evidence, or as falling within the "catchall" exception to the hearsay rule F.R.E. 804(b)(5).

Rule 804(b)(1) provides that

[t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination,

is not excluded by the hearsay rule. Council claims that the conditions of 804(b)(1) were met since a predecessor in interest (the unofficial creditors committee) of the party against whom the testimony is now offered (Mr. Landis Stovall, the Trustee of Sterling) had both the opportunity and motive to develop the testimony. Even assuming that the unofficial creditors committee can be characterized as the predecessor in interest of the trustee, it appears that the similar motive to develop testimony in the non-adversary Rule XI–4 hearing was lacking. In the first place the trustee had not yet been chosen and issue had not yet been joined on the question of the authorization of the loan. Moreover, Rule XI–4 hearings are non-adversary fact-finding proceedings which lack defined issues. As such, they cannot be said to give rise to the type of adversarial cross-examination contemplated by Rule 804(b).

█ Nor are the requisites of Rule 804(b)(5), the "catchall" provision, met. In order to fall within this exception to the hearsay rule, the proponent must demonstrate that the evidence is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." This rule was enacted to cover certain exceptional circumstances where the evidence has a high degree of probativeness and necessity. *See* Moore's *Federal Practice* § 803(24)[7]. Here it appears that the requisite necessity was lacking. Although Fronsdal was concededly unavailable to testify, no effort was made to depose or produce Sterling's Bahamian shareholders on the question of ownership and authority (TR. 297–98). Council protests that Judge Ryan refused to permit any adjournment to compel such testimony

under Bahamian law and thus the Rule XI–4 transcript is the only available evidence on the subject. In so arguing Council appears to disregard the fact that it urged the trial to proceed without adjournment on February 24, 1976, asserting that it had taken all the discovery it wanted (Hearing on February 24, 1976, pp. 3, 7). At that time, however, no affirmative steps had been taken to depose the Bahamian shareholders, nor were any efforts made as of May 6, 1976 (TR. 297–98). It appears that Council was content to offer its transcript without making the requisite reasonable efforts to obtain other evidence. In view of this attitude it can hardly be said that the interests of justice would be served by admitting the evidence.

■ Council next asserts that Judge Ryan erroneously applied Bahamian law to determine the question of authorization. It is true that in his findings of fact Judge Ryan concluded that

> the law of the Bahamas governs whether or not a loan purportedly made to a Bahamian corporation was authorized; which is substantially similar to that of New York.

(Conclusions of Law at 5). Council does not suggest that a result other than that reached by Judge Ryan would follow from an application of New York law, but rather urges reversal regardless of the futility involved. Moreover, it appears that despite his conclusion of law, Judge Ryan applied New York law on the questions of actual and apparent authority, as evidenced by his memorandum decision. Thus, it appears that reversal on this ground would be inappropriate.

■ Council also cites as error the exclusion of Sterling's Petition for Arrangement, schedules and statement of affairs, offered to show Fronsdal's beneficial ownership of Sterling's shares. This evidence included a statement by Fronsdal, while he was president of Sterling in connection with the filing of schedules with the bankruptcy court, that he was the beneficial owner of Sterling shares. It was offered as either an admission against interest or under Rule 804(b)(5). For the reasons set forth above the Rule 805(b)(5) exception may not be invoked. Nor can this statement be considered an admission against interest since it was made *after* the petition was filed and thus not while the estate was in the debtor. *Cf. In re Weissman,* 19 F.2d 769, 771–72 (2d Cir. 1927). Moreover, when Fronsdal made the sworn statement he was president of Sterling for a limited purpose only—to facilitate the filing of schedules with the bankruptcy court. It hardly seems appropriate to attribute to the corporation his statement made in this limited capacity, especially since he was neither an officer nor director of the corporation during the period of the loan.

■ Council's fourth contention is that unauthorized copies of what purported to be the Articles of Association and by-laws of Sterling were erroneously admitted into evidence. Council argues, as it did below, that these alleged foreign public documents were not certified as required by Rules 902(3) and 902(4) of the Federal Rules of Evidence. While it is true that certification is the ordinary practice for authenticating a foreign public document, Rule 902(3) provides that a document may be treated "as presumptively authentic without final certification," "if reasonable opportunity has been given to all parties to investigate [its] authenticity and accuracy." In this case the proffered evidence was accompanied by an affidavit of a Bahamian attorney, who had been appointed by the court as special counsel, averring that the Charter and by-laws were true copies of the original documents on file with the Register of Companies in the Bahamas. Judge Ryan, in receiving the documents, provided that plaintiff could at any future time come forward with evidence that they were not in fact true copies; this plaintiff never did, although well over six months passed between the trial in this proceeding and Judge Ryan's decision. Moreover, Judge Ryan relied on general principles of agency law in reaching his conclusions, and under such principles it was plaintiff's burden to establish the scope of Sovereign's authority.

*See, e. g., P. D. Marchessini & Co. v. H. W. Robinson & Co.*, 287 F.Supp. 728, 732 (S.D. N.Y.1967), including the power to borrow money and lien corporate assets. This burden was not met, regardless of the provisions in the by-laws. Thus, the admission of the evidence could at most be considered harmless error, not affecting the outcome of the case, and clearly not grounds for reversal.

■ Council also cites as error Judge Ryan's findings that Sovereign had neither actual, implied nor apparent authority to enter into the loan transaction in question. In support of this proposition Council asserts that the defense of lack of authority was not available to the trustee. In so arguing, Council recognizes that the trustee stands in the shoes of Sterling and has all those defenses that are available to the bankrupt. Council urges, however, that since Sterling did not have the right to raise the defense of lack of authority, neither does the trustee. In support of this proposition council relies on a series of cases involving statutes or by-laws that required *stockholder* authorization before certain corporate acts could be taken. *See Royal Indemnity Co. v. American Bond and Mortgage Co.*, 289 U.S. 165, 53 S.Ct. 551, 77 L.Ed. 1100 (1933); *Greene v. Reconstruction Finance Corp.*, 100 F.2d 34 (1st Cir. 1938); *Schreiber v. Butte Copper & Zinc Co.*, 98 F.Supp. 106 (S.D.N.Y.1951). In these cases the statutes or by-laws in question were found to have been enacted for the benefit of the stockholders and thus any defense of lack of authorization was personal to those stockholders. However, in the case at bar, the by-laws require authorization by the board of directors, not by the stockholders. Thus, it appears that the cases relied upon by Council are inapposite. Moreover, it is elementary that when an agent for a corporation acts beyond the scope of its authority the corporation may raise the defense of lack of authorization. *See, e. g., Marchessini, supra; Elm Coal & Oil Corp. v. Lieberman*, 18 N.Y.S.2d 344 (S.Ct.1940).

■ Council argues, however, that there was, in fact, actual authority to lien the assets of Sterling and that Judge Ryan erroneously concluded otherwise. As evidence of such authority, Council directs my attention to Trial Exhibits 1 and 2 which are bank resolutions executed by Sterling. These exhibits fail to support Council's contention, however, since the portions of the resolutions referring to the power to borrow money and lien property were not completed, indicating that no such authorization had been given.

■ As further evidence of authorization, Council describes previous borrowings by Sovereign on behalf of Sterling wherein property belonging to Sterling was used as collateral by Sovereign. These borrowings are allegedly evidenced by Exhibits 11–15, 17 and 18. I note that only Exhibits 11–13 bear any indication that property of Sterling was used as collateral by Sovereign or that Sovereign had the power to so act. With regard to these three Exhibits, which are letters signed by DeCarlo pledging certain charter parties of Sterling, there was no evidence that Sterling actually authorized the liens or knew about them. Moreover, based on the rather confused testimony of DeCarlo, I find that it was not clearly erroneous for Judge Ryan to conclude that such evidence did not amount to the unfettered authority of Sovereign, whether actual or implied, to lien Sterling's assets.

■ Council next argues that apparent authority would bind Sterling for the acts of Sovereign, whether or not they were actually authorized. To prove apparent authority, however, it is necessary for Council to show some misleading conduct on the part of the principal, *see Ford v. Unity Hospital*, 32 N.Y.2d 464, 346 N.Y.S.2d 238, 299 N.E.2d 659 (1973) and reliance thereon by the third party. The record is devoid of any acts by Sterling which would constitute such misleading acts. Even if prior loan transactions between Sovereign and Citibank and Manufacturers Hanover could be considered the acts of Sterling, there is no evidence that Council knew of these loans prior to the extension of funds, with the exception of the one loan actually authorized by Sterling's board of directors (TR.

257–58, Ext. 10). The failure to show reliance on the manifestations of the principal is fatal to a claim of apparent authority. *Perry v. New York Life Insurance Co.,* 22 N.Y.S.2d 696 (S.Ct.1940).

Council also urges that the receipt of the proceeds in question by Sterling amounted to ratification of the secured transaction. Ratification requires knowledge by the principal of all the material facts of the transaction coupled with retention of benefits. *See Irving Trust Co. v. Townsend,* 65 F.2d 406, 408 (2d Cir. 1933); *Julien J. Studley, Inc. v. Gulf Oil Corp.,* 282 F.Supp. 748 (S.D.N.Y.1968) *rev'd on other grounds,* 407 F.2d 521 (2d Cir. 1969). Here there is no evidence that the directors knew all the material facts about the loan since they were concededly not contacted with respect to it. (TR. 109–10, 153, 254). Moreover, such knowledge cannot be reasonably imputed to them since only one month elapsed between the making of the loan and the filing of the petition under Chapter XI of the Bankruptcy Act. *Compare Hanover National Bank of New York v. American Dock and Trust Co.,* 148 N.Y. 612, 43 N.E. 72 (1895) (prior course of dealings between the parties over many years sufficient to establish knowledge).

Council's argument that DeCarlo ratified the loan when he prepared the Petition for Arrangement does not withstand scrutiny. DeCarlo's testimony revealed that he hastily prepared the documents, which contained numerous errors, only a few days after he was appointed director of the board. Further, amended schedules had to be prepared after the filing to correct these errors. (TR. 208–10). Finally, DeCarlo was the very person personally liable for the loan and as such he "could not effect a corporate ratification of his own unauthorized act by further action of his own, unknown to the company he purports to represent." *Giebler Mfg. Co. v. Kranenberg,* 102 App.Div. 471, 92 N.Y.S. 843 (2d Dept. 1905).

Nor can Council avail itself of an estoppel theory. As Judge Ryan correctly observed, estoppel is an equitable principle and cannot be invoked to benefit one who does not justifiably rely on the conduct of the principal. Council, for reasons known only to itself, failed to obtain a directors' resolution approving the loan transaction, as was its standard practice, (TR. 242–43) and failed to thoroughly investigate this Bahamian company with which it had had no prior dealings. In view of the carelessness of Council, it ill behooves them to seek aid from an equity court. *World of Food, Inc. v. New York World's Fair,* 22 A.D.2d 278, 254 N.Y.S.2d 658, 662 (1st Dept. 1964).

The balance of Council's memorandum challenges Judge Ryan's finding of fact and sets forth several "uncontroverted" facts which, Council argues, mandate a conclusion that the security agreement was valid and enforceable. While noting that not all the "uncontroverted" facts are in fact undisputed, *see Brief of Defendant,* at 49–50, I also find that there is ample evidence in the record to support Judge Ryan's findings and conclusions. Contrary to Council's assertions, it appears that observation of the witnesses and evaluation of their testimony was an important part of this trial. Accordingly, it would be improper to set aside the trial judge's findings unless they are clearly erroneous. Judge Ryan's findings were not clearly erroneous and therefore his order is affirmed in all respects.

SO ORDERED.