**In re IONOSPHERE CLUBS, INC. and Eastern Air Lines, Inc., Debtors.**

**No. 91–CIV–3219 (LJF).**

United States District Court,
S.D. New York.

Oct. 29, 1991.

Cohen, Weiss and Simon by James L. Linsey, Peter D. DeChiara, New York City, for appellant Air Line Pilots Ass'n, Intern.

Verner, Liipfert, Bernhard, McPherson and Hand, Chartered by Bernhardt K. Wruble, Washington, D.C., for appellee Martin R. Shugrue, Jr. Trustee for the Estate of Eastern Air Lines, Inc.

## ORDER AND OPINION

FREEH, District Judge.

In this case, the Air Line Pilots Association, International ("ALPA") appeals a February 28, 1991 decision of the Bankruptcy Court for the Southern District of New York (Lifland, C.J.) denying ALPA's motion to modify the automatic stay of litigation against debtor Eastern Airlines, Inc. ("Eastern") to allow a 1987 suit against Eastern to proceed. For the reasons stated below, the decision of the Bankruptcy Court is affirmed.

## FACTS

ALPA is an unincorporated labor organization and the authorized collective bargaining representative of Eastern's pilots. (Appellant's Brief at 3). Eastern is a corporation that formerly provided air transportation services within the United States and abroad. (*Id.* at 4). On March 9, 1989, Eastern filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York, and less than one year later, on January 19, 1991, Eastern permanently ceased operations. Its assets are now being liquidated.

Well before Eastern filed its bankruptcy petition, ALPA filed a complaint against Eastern in the United States District Court for the District of Columbia, claiming that Eastern was violating the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, by transferring a number of its assets to Continental Air Lines, Inc. ("Continental"), a less heavily unionized airline also owned by Eastern's parent company, Texas Air Corp. ALPA further alleged that Eastern was acting to deprive its pilots of work opportunities, "all in an attempt to subvert ALPA's status as the pilots' representative." (Appellant's Brief at 4).

One year after the "asset-transfer" suit was filed, Eastern announced plans to downsize its operations substantially. *See Air Line Pilots Association, International v. Eastern Air Lines, Inc.*, 863 F.2d 891, 892–93 (D.C.Cir.1988). As part of that restructuring plan, Eastern intended to terminate almost 12 percent, or 3388, of its employees, including some 500 pilots who were to be eliminated through attrition. *Id.* at 893. In response, on July 28, 1988, ALPA and the International Association of Machinists and Aerospace Workers ("IAM") filed motions for a preliminary injunction to prevent Eastern from implementing the proposed restructuring and employee terminations.[1] *Id.* On August 30, 1988, the United States District Court for the District of Columbia issued the requested injunction, enjoining the proposed terminations as an impermissible violation of status quo working conditions. *Id.* at 894.

After an expedited appeal, a three-judge panel of the United States Court of Appeals for the District of Columbia Circuit reversed, finding that the unions had not demonstrated a likelihood of success on the merits. *Id.* Seven out of eleven active members of the Court denied the unions' request for a rehearing on the matter, 863 F.2d at 913, and the unions then petitioned the United States Supreme Court for a writ of *certiorari*. Consideration of the petition was stayed upon Eastern's filing for bankruptcy on March 9, 1989, which triggered the automatic stay provision under the Bankruptcy Code (the "Code"), 11 U.S.C. § 362.[2]

---

**1.** The Transport Workers Union of America ("TWUA"), the representative of Eastern's flight attendants, also joined the action as a plaintiff. According to counsel at oral argument, all plaintiffs other than ALPA have now settled the matter with Eastern.

**2.** It appears that the petition for *certiorari* was dismissed by the Supreme Court on September

On January 25, 1991, shortly after Eastern ceased operations, ALPA filed a motion requesting the Bankruptcy Court to modify the stay to permit the asset-transfer litigation to proceed in the District of Columbia. After a hearing, the Court, by Chief Judge Lifland, denied ALPA's request to modify the stay. The Court concluded that the union had not demonstrated sufficient cause to allow the litigation to proceed, stating that "the prospect of embroiling the estate into further litigation" would impose a hardship on the estate. The Court further found that, under the circumstances, the resources of the estate would be better devoted "toward the more important goals of quickly turning valuable assets into cash at the least possible expense ..." The unions now appeal from that ruling.

### DISCUSSION

Section 362(a) of the Bankruptcy Code prohibits "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was ... commenced before the commencement of the [bankruptcy action]." It is well-established that an appeal constitutes a continuing judicial proceeding which is subject to § 362. *See Ostano Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206, 207 (2d Cir.) (an appeal is "indisputably" a continuation of a judicial proceeding that is subject to an automatic stay), *aff'd in part, rev'd on other grounds*, 794 F.2d 763 (2d Cir.1986).

■ Section 362(d) further states that, on request of a party, the court "shall grant relief from the stay ... for cause." "Cause" is not defined in the Code. However, courts interpreting the statute have read it to require that the party seeking to lift or modify a stay first establish a legally sufficient basis for the requested relief. In determining whether sufficient cause to modify or lift an automatic stay exists, courts balance the hardship to be imposed on the debtor's estate if the litigation is

allowed to proceed against the hardship to be imposed on the moving party if the stay is not lifted. *In re Todd Shipyards Corp.*, 92 B.R. 600, 602 (Bankr.D.N.J.1988) (and cases cited). Bankruptcy court decisions to maintain an automatic stay can only be reversed on appeal if the district court finds that failure to lift the stay constituted an abuse of discretion. *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir.1987) ("The decision as to whether to lift a [bankruptcy stay] is committed to the discretion of the judge presiding over the bankruptcy proceedings, and we review such decision under the abuse of discretion standard."). *Accord In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir.1986); *Matter of Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985).

ALPA claims that because the balance of hardships clearly favors the unions in this case, its request to lift the stay should have been granted. Specifically, ALPA asserts three "significant" interests in allowing the asset-transfer litigation to proceed: (1) the union's desire to vindicate its rights and litigate the issue of Eastern's liability; (2) the union's interest in having the Supreme Court review the decision of the D.C. Circuit Court of Appeals, which allegedly conflicts with decisions of other circuit courts; and (3) the public interest in having the "confusing state of the law" resolved by the Supreme Court. (Appellant's Brief at 11). ALPA further argues that the Bankruptcy Court has no jurisdiction to determine the asset-transfer claim despite ALPA's previous filing of a proof of claim in that court because the dispute between the parties involves substantial matters of federal law other than the Code. Finally, ALPA asserts that the estate's interest in maintaining the stay is minimal because ALPA has already filed a proof of claim in the Bankruptcy Court and thus, the estate will have to defend against its claims in any event. (*Id.*).

The Trustee for Eastern's estate, Martin S. Shugrue, Jr., opposes any modification to the automatic stay on the grounds that (1) ALPA cannot demonstrate sufficient

23, 1991. *See* —— U.S. ——, 112 S.Ct. 37, —— L.Ed.2d —— (1991). However, during oral argument, counsel for both parties stated that they had no knowledge of any such dismissal. Ac-

cordingly, we assume for purposes of this appeal that the petition for *certiorari* is still pending before the Supreme Court.

cause for such a modification; (2) the burden to the estate caused by lifting the stay outweighs any benefit to be enjoyed by ALPA; and (3) the Bankruptcy Court has jurisdiction to hear all of ALPA's claims. (Appellee's Brief at ii).

The decision below is hereby affirmed. The Bankruptcy Code imposes an automatic stay on all outstanding litigation against a debtor's estate for the very reason the requested relief was denied here—unless the estate is afforded a "breathing period in which [it] may be reorganized or liquidated," creditors will "rac[e] to the courthouse seeking to obtain payment of their claims in preference to and to the detriment of other creditors." *Barclays Bank of New York v. Saypol*, 31 B.R. 796, 798 (Bankr.S.D.N.Y.1983). *See also In re Chateaugay Corp., Reomar Inc.*, 93 B.R. 26, 30 (S.D.N.Y.1988) (automatic stay is intended to prevent a " 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts' ") (*quoting Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)).

 Nothing presented by ALPA indicates that the Bankruptcy Court abused its discretion by refusing to lift the automatic stay. ALPA's interest in having Eastern's liability resolved is identical to the interests of most of Eastern's creditors, and ALPA has not demonstrated that it is entitled to any special consideration. Even if ALPA's petition for *certiorari* is still pending before the Supreme Court, the existence of that petition alone does not warrant lifting of the stay.

 Finally, contrary to ALPA's claims, the Bankruptcy Court does have jurisdiction to determine the union's damages in the asset-transfer litigation. It is true that the district court, not the bankruptcy court, has jurisdiction to decide cases against a debtor whose resolution requires substantial and material consideration of non-Code statutes. 28 U.S.C. § 157(d) (mandating withdrawal by bankruptcy court if resolution of proceedings requires consideration of "both [the Code] and other laws of the United States ..."); *In re Chateaugay Corp.*, 86 B.R. 33, 36 (S.D.N.Y.1987) (same). However, the bankruptcy court does have the power to decide all "core proceedings" under the Code, which are defined to include all matters "concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), and all other proceedings affecting the liquidation of assets or adjusting the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(O).

In this case, the Bankruptcy Court correctly concluded that it has the power to determine the parties' underlying dispute. Resolution of ALPA's claims will not require that the bankruptcy court "engage itself in the intricacies of the RLA." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). Rather, as in an earlier dispute between these parties, the court will merely need to make "routine application of [a] non-Bankruptcy Code federal statute[ ]." [3] *Id.*

For the foregoing reasons, the Bankruptcy Court's decision not to modify or lift the automatic stay is affirmed.

SO ORDERED.

---

**3.** The existence of a possible conflict between the circuit courts in interpreting the RLA does not alter this conclusion. This is not an instance where there is a split of authority within one circuit, so that the bankruptcy court would necessarily have to interpret non-Code statutes in order to value a creditor's claim. In this case, the bankruptcy court must simply determine whether established Second Circuit precedent or the decision of the D.C. Circuit is con-

trolling here, a choice it is perfectly capable of making. Contrary to ALPA's claims, the bankruptcy court will not be required to make a substantive interpretation of the RLA. Rather, the court will simply apply the binding interpretation of a higher court. Resolution of the asserted conflict between the circuits must wait until another day and another case, when the Supreme Court can address the issue.