**In re Policy, POLICY REALTY CORP., Debtor.**

**No. 99 Civ. 1524(SAS).**

United States District Court, S.D. New York.

July 14, 1999.

---

the written Order. For the reasons that follow, the Order of the Bankruptcy Court is reversed. The automatic stay does not apply to Treber.

Andrew L. Morrison, Davidoff & Malito, LLP, New York City, for Appellant.

Mark A. Frankel, Bakenroth & Grossman, LLP, New York City, for Appellee.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Appellant, Treber Realty LLC ("Treber"), is the owner of a building located at 101 West 23rd Street. Treber leases ("Net Lease") the building to 101 West 23rd Street Inc. ("the Co–Op"). The Co–Op subleases the commercial space in the building to Policy Realty Corp. ("Policy"), the debtor and appellee. Treber terminated the Net Lease with the Co–Op for failure to pay its rent arrears, pursuant to an accelerated termination clause in the Net Lease. Realizing that termination of the Net Lease between the Co–Op and Treber would also inevitably terminate Policy's sublease, Policy filed for bankruptcy. Treber immediately sought an Order declaring that its action to terminate the Net Lease was exempt from the provisions of the automatic stay.

Treber appeals from a decision of the United States Bankruptcy Court for the Southern District of New York, Blackshear, B.J., which denied Treber's motion for an order, (1) declaring the automatic stay provision inapplicable to Treber, pursuant to Bankruptcy Code §§ 362(b)(10) and 541(b)(2); or, in the alternative, (2) lifting the automatic stay pursuant to Bankruptcy Code § 362(d)(1) so as to permit Treber to terminate the Net Lease. Treber also appeals the Bankruptcy Court's Order on the ground that it mischaracterized Treber's motion and contained findings of fact and conclusions of law not made by the Court in its oral ruling, but appearing for the first time in

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Treber is the owner of a building located at 101 West 23rd Street, New York, New York, and leases it to the Co–Op pursuant to the Net Lease. *See* Affidavit of Adrian Zuckerman, counsel for appellant ("Zuckerman Aff."), dated September 18, 1998, at ¶ 1. The Co–Op subleases the commercial space to Policy, who further sublets all of the commercial space to a variety of businesses. *See id.* at ¶ 2. Policy is not in possession of any of the commercial spaces. *See id.* at ¶ 11.

Pursuant to the terms of the Net Lease between Treber and the Co–Op, the annual rent for the period January 1, 1998 through June 30, 2008 is not fixed. Rather, the lease requires the rent to be determined based on a percentage of the appraised value of the land. *See id.* at ¶ 13. If the parties cannot agree to the value of the land, it is to be determined by arbitration. *See id.* In an award dated July 28, 1998, an arbitration panel fixed the Co–Op's new rent at $700,000 per year, a 610% increase over the prior annual rent of $110,000. *See id.;* Ex. C (Arbitration Award).

Prior to the decision of the arbitrators, the Co–Op acknowledged and confirmed its obligation to pay the newly determined rent with interest on the difference between the new rent and the old rent. *See id.* at ¶ 14; Ex. D (Letter dated January 22, 1998, from the Co–Op's counsel to Treber's counsel). However, after the decision, the Co–Op failed to pay rent owed from January 1st, 1998, and Treber sent the Co–Op notice, dated August 1, 1998, that the Co–Op owed rent arrears in the amount of $412,251.41. *See id.* at ¶ 15; Ex. E (Letter dated August 1, 1998, from

Treber to the Co–Op). Then, by notice dated August 24, 1998, Treber terminated the Net Lease as of August 31, 1998, pursuant to Article 21 of the Net Lease. *See id.* at ¶ 17; Ex A (Net Lease); Ex. G (Letter dated August 24, 1998, from Treber to the Co–Op).

Policy contends that the exorbitant increase in the annual rent that caused the Co–Op to default was part of a secret deal between the Co–Op and Treber to terminate Policy's sublease. *See* Policy's Objection to Lift Stay Motion ("Policy's Ob."), dated October 16, 1998, at ¶ 7.

## B. The State Court Proceedings

On August 31, 1998, the day on which the lease was to terminate pursuant to the termination notice, Policy commenced an action by order to show cause in the New York State Supreme Court. Policy sought monetary damages against Treber and the Co–Op and injunctive relief to prevent the termination of the Net Lease. *See* Zuckerman Aff. at ¶ 19; Ex. H (*Policy Realty Corp. v. 101 West 23 Apt, Inc. and Treber Realty LLC* (Index No. 604238/98, Gonzalez, J.)). In addition, Policy sought a temporary restraining order ("TRO") staying and tolling Treber's termination of the Net Lease. *See* Zuckerman Aff. at ¶ 20.[1]

The state court issued the TRO, tolling the Net Lease's termination pending a hearing on Policy's motion, which was scheduled for September 16, 1998. *See id.* The TRO states in pertinent part, "that pending the hearing of this motion the date for the termination and cancellation of the Ground [Net] Lease ... is hereby tolled." *See* Zuckerman Aff. at Ex. H.

Treber then moved in the New York Supreme Court Appellate Division, First Department, to vacate the toll. *See id.* at ¶ 21; Ex. I (Affidavit of Zuckerman in Support of Motion to Vacate or Modify Ex Parte Order, dated September 3, 1998). By Order dated September 3, 1998, the court granted Treber's application to vacate the toll unless Policy posted a bond in the amount of $500,000 by September 9, 1998. *See id.* at ¶ 22; Ex. J (*Policy Realty Corp. v. 101 West 23 Apt, Inc. and Treber Realty LLC* (Index No. 604238/98, Rosenberger, J.)). Specifically, the court held: "Application is granted unless movant [Policy] posts a bond in amount of $500,000 by September 9, 1998." *See* Ex. J.

Unable to post the bond required by the Appellate Division, Policy filed for bankruptcy at approximately 4:00 p.m. on September 9, 1998, just before the TRO was vacated. *See id.* at ¶ 23; Ex. K (Bankruptcy filing). Shortly after, on September 16, 1998, Policy withdrew its motion seeking injunctive relief. *See id.* at ¶ 24.

Then, on September 23, 1998, Treber moved in the bankruptcy court by order to show cause for a declaration:

> that the automatic stay provision of 11 U.S.C. § 362(a) is inapplicable to Treber's actions with respect to the terminated net lease between Treber ... and ... [the Co–Op], as tenant. In the alternative Treber seeks an Order, pursuant to § 362(d) vacating the automatic stay provision with respect to Treber.

Memorandum of Law in Support of Treber's Motion, dated September 23, 1998 at p. 1.

## C. The Bankruptcy Court Proceedings

The Bankruptcy Court scheduled an October 21, 1998 return date for Treber's order to show cause. *See* Brief of Appellant Treber Realty, LLC, dated March 26, 1999. At the hearing, in which the parties only discussed the applicability of the stay, the court stated:

---

1. As defined in Black's Law Dictionary, a *stay* is the act of arresting a judicial proceeding by court order. It is a kind of injunction by which a court freezes its proceedings at a particular point. Black's Law Dictionary 1267 (5th ed.1979). A *toll* is defined as a suspension or a temporary stop, as for example, the statute of limitations is tolled. *Id.* at 1334.

I am not going to grant your [sic] relief from the stay, no, because all of the matters will be before me. I will not grant your [sic] relief from the 362. I think that 362 is applicable to you based upon my reading of cases that I have written on as well as the 2d [Second] Circuit.

Transcript of Hearing ("Tr."), dated October 21, 1998, at p. 25 1.10–15.

The court instructed counsel for Policy to submit an order within five days with notice to all parties. *See* Tr. at p. 28 1.9–10. Treber objected to Policy's proposed order on the ground that it mischaracterized Treber's application and that none of the findings in the proposed order were supported by the transcript of the proceedings held on October 21, 1998. *See* Treber's Objections to Debtor's Proposed Order, dated November 2, 1998. Despite Treber's written objections, the Bankruptcy Court signed the proposed order without any changes. The Order denied Treber's application in all respects.

## D. The Bankruptcy Court's Order

The Order states in pertinent part:

Upon the application of Treber ... for an order deeming that the automatic stay under section 362 of the Bankruptcy Code does not stay Treber from taking any action with respect to that certain property located at 101 West 23rd Street ..., or in the alternative, lifting the automatic stay, to permit Treber to take such action as it deems necessary with respect to the Property ..., and upon the hearing held before this Court on October 21, 1998, and it appearing that:

1. The debtor had a property interest in the sublease as of September 9, 1998 ... because ... there was a State Court stay of any termination of the Ground Lease until September 9, 1998;

2. The automatic stay under section 362(a) of the bankruptcy Code enjoins post bankruptcy termination of the Debtor's Sublease, as well as the Debt-

or's landlord Ground Lease because there was a State Court Stay of such termination through September 9, 1998, and the automatic stay in bankruptcy enjoined termination commencing on September 9, 1998 Petition Date. *In re 48th Steakhouse Inc.*, 835 F.2d 427 (2d Cir.1987), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *In re Cavallini, Ltd.*, 112 B.R. 73 (Bankr.S.D.N.Y.1990).

3. Treber violated the automatic stay by sending termination notices to the Debtor's subtenants after the Debtor provided Treber notice of the filing of Debtor's bankruptcy petition.

4. Pursuant to section 362(d)(1) of the Bankruptcy Code, Treber is adequately protected by the Debtor's agreement to segregate sufficient funds to pay its lease obligations under its sublease

5. Pursuant to section 362(d)(2) and 362(g)(1) of the Bankruptcy Code, Treber has failed to establish that the Debtor lacks equity in the sublease; and

6. The Debtor has challenged the increase in the Ground Lease rent, Treber's attempted termination of the Ground Lease, and Treber's attempted termination of the Sublease, all of which has been removed to the Court, and which litigation can form the basis for a plan of reorganization, *In re Onio's Italian Restaurant Corp.*, 42 B.R. 319 (Bankr.S.D.N.Y.1984); it is

ORDERED, that Treber's Application be denied in all respects....

## III. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from final orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). The standard used to review Bankruptcy Court orders is set forth in Rule 8013 of the Federal Rules of Bankruptcy Procedure:

On an appeal, the district court or the bankruptcy appellate panel may affirm,

modify, or reverse a bankruptcy judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses.

Thus, the Bankruptcy Court's findings of fact are reviewed for clear error. *See Shugrue v. Air Line Pilots Ass'n, Int'l, (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 988 (2d Cir.1990). Conclusions of law are reviewed de novo. *See id.* Because the decision of whether to lift an automatic stay is committed to the discretion of the bankruptcy judge, a district court may overturn a denial of a motion to lift a stay only upon a showing of abuse of discretion. *See In re Sonnax,* 907 F.2d 1280, 1286 (2d Cir.1990); *In re Ionosphere Clubs Inc.,* 133 B.R. 5, 7 (S.D.N.Y.1991).

## IV. DISCUSSION

### A. The Automatic Stay Does Not Stay the State Court's Toll and Does Not Stay the Appellate Court's Vacatur of that Toll

In paragraph two (2) of the Order, the Bankruptcy Court held that the automatic stay provision of the Bankruptcy Code requires that post-bankruptcy termination of Policy's sublease be enjoined as a result of the state court stay of such termination. *See supra* at p. 125. The express language of 11 U.S.C. § 362(a) states in pertinent part:

a petition filed ... operates as a stay, applicable to all entities, of-
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was ... commenced before the commencement of the case under this title.

11 U.S.C. § 362(a).

The purpose of the Chapter 11 petition is to enable a business or an individual to reorganize and emerge from bankruptcy. *See In re C–TC 9th Avenue Partnership v. Norton Company,* 113 F.3d 1304, 1309 (2d Cir.1997). The reorganization process provides the debtor with breathing space during which it can return to a viable state. *See id.* at 1310. Under the Bankruptcy Code, the filing of a Chapter 11 bankruptcy petition automatically stays most judicial actions against the debtor. *See* 11 U.S.C. § 362(a)(1). The effect of the stay is to halt the commencement or the continuation of judicial action that was or could have been commenced against the debtor prior to bankruptcy.

Treber argues that the state court's tolling of the Net Lease's termination date until September 9, 1998 is not a judicial "action or proceeding" covered by the automatic stay. While the express language and legislative purposes underlying the automatic stay suggest that the automatic stay provision is generally meant to be read broadly, precedent supports the conclusion that the state court's toll and the appellate court's vacatur of that toll do not constitute judicial "actions or proceedings" and thus are not stayed by § 362(a).

It is well established that the automatic stay does not toll a time limitation. For instance, the automatic stay does not toll the running of time under a contract and does not prevent the automatic termination of a contract. *See Moody v. Amoco Oil Co.,* 734 F.2d 1200 (8th Cir.1984). Moreover, the automatic stay generally does not stay the running of statutory time periods, limitation periods, periods to cure defaults, and the acceleration of loans or debts. Succinctly stated, "§ 362[a] was not intended to act as a toll on leases, contracts, and the like, but only on actual proceedings and similar acts against the debtor." *In re Compass Development,* 55 B.R. 260 (Bankr.D.N.J. 1985); *see also In re Diversified Washes of Vandalia,* 147 B.R. 23 (Bankr.S.D.Ohio 1992) (holding that when franchisor accel-

erated termination of contract with debtor-franchisee by sending a notice of termination, debtor's filing of bankruptcy ten days before the accelerated termination date did not prevent the termination time from running.)

Judicial intervention establishing, tolling, or extending the termination date of contracts does not affect this analysis.[2] In *In re Schmidt*, 71 B.R. 618, 619–20 (Bkrtcy.D.N.D.1987), owners of a deed commenced an action seeking cancellation of a contract for the purchase of the deed because the debtor defaulted on payment obligations. The court canceled the contract and ordered that to redeem the property from cancellation, the debtors had to pay the vendors the sum owed by February 1, 1987. *See id.* at 620. Before the redemption period lapsed, the debtor filed a bankruptcy petition and sought relief under the provision of the automatic stay. The bankruptcy court held that the automatic transfer of property following the expiration of a period of redemption is not an "act", a "proceeding", or the "enforcement" of a right within the meaning of § 362(a) because the contract vendor need do nothing in order to effectuate the cancellation. *See id.* Thus, the time period for redemption continues to run despite the filing of a bankruptcy petition. *See id.* at 621–22.

In this case, Treber accelerated the termination of the Net Lease with the Co–Op due to its default. Pursuant to the terms of the Net Lease, Treber first sent the Co–Op a notice of default; then on August 24, 1998, Treber sent the Co–Op notice of termination declaring the lease terminated on August 31, 1998. Had Policy filed for bankruptcy upon receipt of the termination notice instead of filing an action in state court, there is no doubt that the automatic stay would not toll the termination of the Net Lease. See pp. 127–29, *infra*, and *In re Compass*, 55 B.R. at 262. The state court's toll of the termination date to September 9, 1998 does not change the result.

A bankruptcy court may not exercise its equitable powers to create substantive rights that do not exist under state law. The state court was well within its authority to cancel the contract and fix a redemption period and it would be a completely inappropriate exercise of equitable powers for this [bankruptcy] court, to ignore that redemption period.

*In re Schmidt*, 71 B.R. at 621. Here, merely because the state court had the power to toll the termination until September 9, 1998, and to vacate that toll in the absence of a substantial bond, does not mean that the Bankruptcy Court had the power to extend that toll by use of the automatic stay.

**B. The Automatic Stay Does Not Apply to a Non–Residential Lease that has Terminated During a Bankruptcy Proceeding**

■ Treber also argues that because the automatic stay does not toll the termination of the Net Lease, the automatic stay is inapplicable based on §§ 541(b)(2) and 362(b)(10) of the Bankruptcy Code. The commencement of a bankruptcy case creates an estate. Section 541 broadly defines the property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, § 541(b)(2) specifically excludes from this estate:

> any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease

---

**2.** Because Policy sought a temporary restraining order after the landlord sent the notice of termination, the state court toll is not a "Yellowstone" injunction under New York law and thus does not preserve the lease until the merits of the dispute can be resolved. *See Long Island Gynecological Services, P.C. v. 1103 Stewart Ave. Associates Ltd. Partnership*, 224 A.D.2d 591, 638 N.Y.S.2d 959 (2d Dep't. 1996).

before the commencement of the case under this title, and . . . during the case.

11 U.S.C. § 541(b)(2).

Section 362 defines the ambit of the automatic stay. Paragraph (b)(10) specifically excludes from this protection:

any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property.

11 U.S.C. § 362(b)(10). Although the Bankruptcy Code does not define the terms "terminated" and "stated term," the phrase "stated term"—which is not limited in any way—and the legislative history of § 362 support the conclusion that Treber's accelerated termination pursuant to Article 21 of the Net Lease is covered by §§ 541(b)(2) and 362(b)(10).

According to the legislative history, this section is intended to permit landlords to proceed promptly in state court to reclaim possession of the non-residential lease premises where the lease expires by its own terms and to finalize landlord/tenant disputes. *See In re Neville,* 118 B.R. 14 (Bankr.E.D.N.Y.1990); S.Rep. No. 98–65 98th Congress., 1st Sess. 68 (1983). "Clearly, these code sections evidence Congress' intent that lessors of nonresidential real property are entitled to significant safeguards." *In re Memphis–Friday's Assoc.,* 88 B.R. 830, 833–34 (Bankr. W.D.Tenn.1988).

 Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Issa Corp.,* 142 B.R. 75, 77 (Bankr. S.D.N.Y.1992). The Bankruptcy Code directs that the question of "termination" is to be resolved by reference to "applicable nonbankruptcy law." 11 U.S.C. § 365. In this context, "applicable nonbankruptcy law" is state law. *See In re Air Vectors*

*Associates,* 53 B.R. 668, 685 (Bankr. S.D.N.Y.1985); *In re Memphis–Friday's,* 88 B.R. at 834.

 A lease may be terminated under New York law by operation of a conditional limitation. *See In re Musikahn Corp.,* 57 B.R. 938, 940 (Bankr.E.D.N.Y. 1986). In this manner, the landlord sends the tenant in default a notice of termination of the lease, stating that the lease will be deemed terminated upon a specified date due to tenant's default. *See id.* The lease is terminated when the time expires, rather than on any further act by the landlord. *See id.* Moreover, under New York law, a subtenant's rights are measured by those of its immediate landlord. *See World of Food, Inc. v. New York World's Fair,* 22 A.D.2d 278, 254 N.Y.S.2d 658 (1st Dept.1964). Accordingly, when a prime lease is terminated by operation of its stated terms, the rights of any subtenants of the prime tenant also terminate. *See id.*

Here, Policy has a nonresidential sublease with the Co–Op. Treber accelerated the termination date of the Net Lease to August 31, 1998 pursuant to Article 21 of the Net Lease. Because the state court merely tolled the termination until September 9, 1998, the Net Lease terminated by the expiration of a "stated term" of the lease, Article 21, on the same day that Policy filed its bankruptcy petition—September 9, 1998. Thus, the Net Lease and Policy's sublease are not property of the estate and are not protected by the automatic stay. *See generally In re West Pine Construction Co.,* 80 B.R. 315, 319–20 (Bankr.E.D.Pa.1987) (holding that phrase "stated term" includes in its scope leases that have been terminated as a result of acceleration due to defaults.)

### C. *In re 48th Street Steakhouse Inc.*

In reaching a contrary conclusion, the Bankruptcy Court relied on *In re 48th Street Steakhouse Inc.,* 835 F.2d 427 (2d Cir.1987). However, the Bankruptcy

Court's reliance on *In re Steakhouse* is misplaced. Although that case also dealt with a landlord, a lessee, and a sublessee, the case is easily distinguishable. In *In re Steakhouse,* the landlord did not send the notice of termination to the lessee until **after** the sublessee filed for bankruptcy. Here, Treber terminated the Net Lease **prior to** Policy's bankruptcy filing.

This distinction is important. It is well established that the automatic stay provision of § 362(a) is intended to preserve the status quo as of the date of commencement of bankruptcy proceedings. In *In re Steakhouse,* when the sublessee filed for bankruptcy, the lease was not due to expire until a year later. The court in *In re Steakhouse* realized that the landlord was attempting to recapture the premises from a bankrupt sublessee through indirect means by accelerating the termination of the lease between the landlord and the lessee. However, when Policy filed for bankruptcy, Net Lease's termination date had already been accelerated. Here, Policy is attempting to use the Bankruptcy Code to extend a lease that has terminated by its own stated terms, thus altering the status quo as of the filing date.

### D. Policy's Equitable Possessory Interest Is Insufficient to Trigger the Automatic Stay

Policy finally argues that its equitable possessory interest in the property should trigger the automatic stay.

A mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay. *See In re Onio's Italian Restaurant Corp.,* 42 B.R. 319, 320–21 (Bankr.S.D.N.Y.1984). *In re Steakhouse,* 835 F.2d at 430. Policy's argument is totally without support. First, Policy is not in possession of any of the subleased premises; rather, it sub-subleases all of the commercial space to a variety of businesses. Second, Policy's argument, if adopted, would undermine the purpose of §§ 362(b)(10) and 541(b)(2).

The language of § 362(b)(10) clearly indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the automatic stay when the Debtor is operating under a lease of non-residential real property that has terminated by the expiration of the stated term during a case under this title.

As the court in *Neville* stated:

for this court to accept Debtor's argument that 'his equitable possessory interests were protected by the automatic stay' would result in nullifying Section [§ ] 362(b)(10) which was purposely placed into the Bankruptcy Code to deal with situations such as these.

118 B.R. at 18; *see also In re Jarman,* 118 B.R. 380, 382 (Bankr.D.S.C.1989) ("It would be chaotic if every non-residential lease termination could ultimately be frustrated by the last minute filing of a Chapter 11 proceeding in federal court."). Accordingly, Policy's claim of an equitable possessory interest is insufficient to trigger the protection of the automatic stay. Because the automatic stay does not apply in these circumstances, there is no need to review the question of whether the Bankruptcy Court abused its discretion in declining to lift the stay.

### V. CONCLUSION

For the reasons set forth above, the Bankruptcy Court's Order is reversed. The automatic stay does not prevent Treber's termination of the Net Lease.